# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**AMERICAN COACH LINES OF ORLANDO, INC.,**

         **Plaintiff,**

**-vs-**                              **Case No.  6:09-cv-1999-Orl-19GJK**

**NORTH AMERICAN BUS INDUSTRIES, INC., and BLUE BIRD CORPORATION,**

         **Defendants.**

_____

# ORDER

This case comes before the Court on the following:

1.    Motion for Summary Judgment by Defendants North American Bus Industries, Inc. and Blue Bird Corporation (Doc. No. 33, filed July 26, 2010);

2.    Notice of Filing of Affidavit of Ernest W. Lee in Support of Motion for Summary Judgment by Defendants North American Bus Industries, Inc. and Blue Bird Corporation (Doc. No. 34, filed July 26, 2010);

3.    Response in Opposition to Defendants' Motion for Summary Judgment and Request for Oral Argument by Plaintiff American Coach Lines of Orlando, Inc. (Doc. No. 41, filed Aug. 27, 2010);

4.    Notice of Filing of Affidavit of Brian M. Dickson in Support of Response in Opposition to Defendants' Motion for Summary Judgment by Plaintiff American Coach Lines of Orlando, Inc. (Doc. No. 42, filed Aug. 27, 2010);

5.      Notice of Filing of Affidavit of Michael W. Pierce in Support of Response in Opposition to Defendants' Motion for Summary Judgment by Plaintiff American Coach Lines of Orlando, Inc. (Doc. No. 43, filed Aug. 27, 2010); and

6.      Reply to Response in Opposition to Motion for Summary Judgment by North American Bus Industries, Inc. and Blue Bird Corporation (Doc. No. 46, filed Sept. 22, 2010).

## Background

### I. Undisputed Facts

This case concerns eleven buses purchased in 2005 by Plaintiff American Coach Lines of Orlando, Inc. ("American Coach") from the manufacturer, Defendant Blue Bird Corporation ("Blue Bird"). (Doc. No. 34-1 ¶¶ 4-5.) The buses were delivered to American Coach in March 2006.[1] American Coach thereafter discovered mechanical problems with the subject buses, and American Coach reported those problems to Blue Bird "as soon as they were discovered." (Doc. No. 42 ¶ 5.) Blue Bird responded by referring American Coach to North American Bus Industries, Inc. ("NABI").[2] (*Id.* ¶ 7.)

---

[1] According to Blue Bird's records, the eleven buses were delivered to American Coach on various dates in March of 2006. (Doc. No. 34-1 ¶ 7, at 5-15.) In response to Blue Bird's request for admissions, American Coach denied that the buses were delivered in March of 2006 because it failed to locate in its files Blue Bird's delivery releases showing that the buses were delivered on various dates in March of 2006 and because Blue Bird's delivery releases were not signed by a representative of American Coach. (Doc. No. 41-1 ¶¶ 3-15.) However, American Coach has produced no evidence that the buses were not delivered in March of 2006.

[2] American Coach alleges that Blue Bird is a subsidiary of NABI. (Doc. No. 1 ¶ 11.) However, the relationship, if any, between Blue Bird and NABI is unclear from the evidence of record. It is the "understanding" of Michael Pierce and Brian Dickson, two employees of American Coach, that Buddy Cox, the "Director of Sales" for Blue Bird, later became the "Sales Director" for NABI. (Doc. No. 42 ¶ 15; Doc. No. 43 ¶ 8.) Such "understanding" is not based on personal (continued...)

At some unspecified time after American Coach purchased the subject buses, American Coach "was told [by an unspecified person] that Blue Bird was discontinuing" the model of the subject buses "but was assured that the discontinuation of the models would not affect [American Coach's] ability to obtain replacement parts in a timely fashion." (*Id.* ¶ 4.) "On an ongoing basis," representatives of both Blue Bird and NABI told American Coach that they would resolve the mechanical problems with the buses. (*Id.* ¶ 8.) However, American Coach asserts that Blue Bird and NABI failed to provide replacement parts and repairs in a timely fashion and that the replacement parts failed. (*Id.* ¶ 9.)

In early 2008, Brian M. Dickson, the General Manager of American Coach, met with James Bernacchi, Senior Vice President of NABI, to discuss the mechanical problems with the subject buses. (*Id.* ¶ 10.) At this meeting, Bernacchi acknowledged that there were an unusual number of mechanical issues with the subject buses requiring repair and replacement parts. (*Id.*) According to Dickson, "Bernacchi represented that he could – and would – resolve these issues." (*Id.*)

In addition to meeting with Bernacchi, Dickson discussed the buses' mechanical problems with other representatives of NABI and Blue Bird, including Jack Kemp, who identified himself as American Coach's service contact with NABI. (*Id.* ¶ 11.) Kemp told Michael W. Pierce, the Vice President of Maintenance for American Coach, that he should talk to representatives of both Blue

_____

(...continued)

knowledge and thus cannot be considered by the Court on the instant motion for summary judgment. *See Martin v. Shawano-Gresham Sch. Dist.*, 295 F.3d 701, 713 (7th Cir. 2002) (noting that an affiant's "understanding" of a matter does not satisfy the personal knowledge requirement for statements in affidavits under Federal Rule of Civil Procedure 56(e)(1)). In any case, the similarity of Cox's titles at Blue Bird and NABI, without more, does not show that Blue Bird is a subsidiary of NABI.

Bird and NABI to resolve the subject buses' mechanical issues and to obtain replacement parts. (Doc. No. 43 ¶ 4.)  Buddy Cox, the Director of Sales for Blue Bird, was also a point of contact for American Coach.  (Doc. No. 42 ¶ 15.)  Cox assured American Coach that Blue Bird and NABI would resolved the buses' mechanical problems.  (*Id.*)

On December 17, 2008, Dickson notified Blue Bird and NABI that "parts for a bus that [was] in an accident had a lead time of fourteen (14) weeks . . . ." (*Id.* ¶ 12.)  Kemp stated in response that "he would help." (*Id.*)  On March 13, 2009, Dickson contacted NABI and Blue Bird about a bus that "had been out of service for several months" and for which parts had not been delivered by March 1, 2009 as promised.  (*Id.* ¶ 13.)  Dickson maintains that he was told by an unidentified source that NABI and Blue Bird "would resolve the problems."  (*Id.*)  Also on March 13, 2009, American Coach asked Blue Bird and NABI to buy back the buses due to the persistent mechanical problems. (*Id.* ¶ 14.)  NABI responded by "ask[ing] for part numbers and offer[ing] to help." (*Id.*)

On March 16, 2009, John Lewis, the Director of Aftermarket Sales for NABI, told Pierce that a parts operation employee was planning a trip to the area and would be calling to set up an appointment.  (Doc. No. 43 ¶ 8.)  During this conversation, Lewis asked Pierce for the most critical parts needed by American Coach to get the buses back in service.  (*Id.*)

Downtimes for the subject buses ranged from days to months, lead times on delivery of parts were often weeks at a time, and the buses were out of service on average over 50% of the time. (Doc. No. 42 ¶¶ 6, 12.)  Dickson and Pierce maintain that NABI and Blue Bird failed to provide replacement parts either completely or within a reasonable time frame.  (*Id.* ¶ 20; Doc. No. 43 ¶ 15.) Dickson and Pierce further contend that American Coach "sustained economic losses directly

attributable to the failure and/or refusal of Blue Bird and NABI to provide replacement parts in a timely fashion."  (Doc. No. 42 ¶ 21; Doc. No. 43 ¶ 16.)

Ernest W. Lee, the Manager of Warranty Administration for Blue Bird, asserted that "[i]n connection with the sale and delivery of the [subject buses], Blue Bird issued its standard Limited Warranty"[3] to American Coach.  (Doc. No. 34-1 ¶¶ 1, 8.)  Lee further stated that "[a]s a matter of general practice, a copy of the Limited Warranty would have been delivered with each of the [b]uses."  (*Id.* ¶ 8.)

American Coach denied the Defendants' request to admit that the Limited Warranty applied to the purchase and sale of the subject buses on the ground that it was unable to locate the Limited Warranty for the subject buses.  (Doc. No. 41-1 ¶ 1.)  Dickson maintains that he searched American Coach's records for the Limited Warranty but was unable to locate it or any other written warranty for the subject buses.  (Doc. No. 42 ¶ 3.)  Dickson further asserts that he located a Blue Bird limited warranty for buses of the same model as the subject buses purchased by American Coach of Miami, Inc. ("Miami Warranty").  (*Id.*)  According the Dickson, the Miami Warranty contained "different and/or additional language" than the Limited Warranty.  (*Id.*)  Although the Miami Warranty is referenced as "Exhibit 2" to Dickson's affidavit, the Miami Warranty was not attached to Dickson's affidavit and is not otherwise present in the record.  (*Id.*)

## II.  Parties' Contentions

On November 24, 2009, American Coach filed a twelve-count complaint against Blue Bird and NABI, alleging: (1) breach of contract against NABI; (2) breach of implied warranty of

---

[3] The Limited Warranty is made by "Blue Bird Body Company," not Blue Bird Corporation, the party to this lawsuit.  (Doc. No. 34-1 at 16.)  Because no party draws this distinction in its arguments on summary judgment, the Court will not make this distinction in its analysis.

merchantability against NABI; (3) breach of implied warranty of fitness for a particular purpose against NABI; (4) breach of express warranty against NABI; (5) negligence against NABI; (6) strict liability against NABI; (7) breach of contract against Blue Bird; (8) breach of implied warranty of merchantability against Blue Bird; (9) breach of implied warranty of fitness for a particular purpose against Blue Bird; (10) breach of express warranty against Blue Bird; (11) negligence against Blue Bird; and (12) strict liability against Blue Bird.  (Doc. No. 1.)

On July 26, 2010, Blue Bird & NABI moved for summary judgment on all twelve counts. (Doc. No. 33.)  American Coach has responded in opposition, has requested oral argument, and has moved the Court to defer ruling on the Motion until further discovery is taken.  (Doc. No. 41.)

## Standard of Review

A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled judgment as a matter of law."  Fed. R. Civ. P. 56(c); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259 (11th Cir. 2004).  An issue of fact is "material" under the applicable substantive law, if it might affect the outcome of the case.  *Hickson Corp.*, 357 F.3d at 1259.  An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party.  *Id.* at 1260.  The court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.*; *Anderson*, 477 U.S. at 251-52.

The party moving for summary judgment has the burden of proving that: (1) there is no genuine issue as to any material fact, and (2) it is entitled to judgment as a matter of law.  *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  In determining whether the moving party has satisfied

its burden, the court considers all inferences drawn from the underlying facts in the light most

favorable to the party opposing the motion and resolves all reasonable doubts against the moving

party.  *Anderson*, 477 U.S. at 255.  The court may not weigh conflicting evidence or weigh the

credibility of the parties.  *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 919 (11th Cir. 1993).

If a reasonable fact finder could draw more than one inference from the facts and that inference

creates an issue of material fact, the court must not grant summary judgment.  *Id.*  On the other hand,

summary judgment must be granted "against a party who fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which the party will bear

the burden of proof at trial."  *Celotex Corp.*, 477 U.S. at 322.  In addition, when a claimant fails to

produce "anything more than a repetition of his conclusory allegations," summary judgment for the

movant is "not only proper but required."  *Morris v. Ross*, 663 F.2d 1032, 1034 (11th Cir. 1981).

## Analysis

Blue Bird and NABI seek summary judgment on each of the claims asserted against them

in the Complaint.  (Doc. No. 33.)  Before turning to the merits of each claim, the Court will address

the parties' dispute regarding whether Florida or Georgia law applies here and whether the Court's

ruling on the Motion for Summary Judgment should be postponed to afford American Coach an

opportunity to conduct further discovery.

## I.  Governing Law

Blue Bird and NABI argue that Georgia law applies to American Coach's claims pursuant

to the choice of law provision in the Limited Warranty.  (Doc. No. 33 at 6-8.)  American Coach

argues that determining whether Florida or Georgia law governs this case would be premature

because there are genuine issues of material fact concerning whether the Limited Warranty or any other warranty governs the subject buses and whether the terms of the governing warranty were amended through Defendants' conduct.   (Doc. No. 41 at 5-8.)   A choice of law analysis is unnecessary where, as in this case, the parties do not cite and the Court does not find any conflicting Florida and Georgia laws relevant to the claims at issue.   *See Fioretti v. Mass. Gen. Life Ins. Co.*, 53 F.3d 1228, 1234 (11th Cir. 1995) (noting that a choice of law analysis is unnecessary where the applicable laws of the states at issue do not conflict).   Accordingly, the Court will not conduct a choice of law analysis at this stage of the proceedings.

## II. Postponing Motion to Allow Further Discovery

American Coach argues that if the Court finds insufficient evidence to create a genuine issue of material fact on any claim, the Court should postpone ruling on the motion for summary judgment until the parties finish deposing corporate representatives pursuant to Federal Rule of Civil Procedure 56(f).  (Doc. No. 41 at 17.)

Federal Rule of Civil Procedure 56(f) provides that "[i]f a party opposing [a motion for summary judgment] shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may," *inter alia*, order a continuance.  American Coach has failed to comply with this rule, as its request for a continuance is not supported by affidavit.

The Eleventh Circuit has recognized "that the interests of justice will sometimes require a district court to postpone its ruling on a motion for summary judgment even though the technical requirements of Rule 56(f) have not been met."  *Snook v. Trust Co. of Ga. Bank of Savannah, N.A.*, 859 F.2d 865, 871 (11th Cir. 1988).  The guiding principle is "that summary judgment may only be decided upon an adequate record."  *Id.* at 870 (quoting *WSB-TV v. Lee*, 842 F.2d 1266, 1269 (11th

Cir. 1988)).  "The party opposing a motion for summary judgment has a right to challenge the affidavits and other factual materials submitted in support of the motion by conducting sufficient discovery so as to enable him to determine whether he can furnish opposing affidavits." *Id.* (citations omitted).  "However, the party opposing the motion for summary judgment bears the burden of calling to the district court's attention any outstanding discovery." *Id.* at 871 (citation omitted).  "The party seeking to [postpone a summary judgment ruling for further discovery] may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts, but rather he must specifically demonstrate how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact." *Reflectone, Inc. v. Farrand Optical Co., Inc.*, 862 F.2d 841, 843-44 (11th Cir. 1989) (quoting *Wallace v. Brownell Pontiac-GMC Co.,* 703 F.2d 525, 527 (11th Cir. 1983))).

American Coach asserts that it should receive additional time to conduct discovery prior to the Court's ruling on the Motion for Summary Judgment for the following reasons:

> [I]n an effort to minimize the expense of litigation for all parties, [American Coach] requested early mediation before conducting additional discovery.  Mediation was initially scheduled for August 19, 2010.  At Defendants' request, mediation was posponed to allow for additional time for discovery.  The parties are in the process of coordinating the depositions of their respective corporate representatives.  This request is not made for delay and will allow both parties to pursue additional discovery that may assist the Court in rendering a decision on the pending motion.

(Doc. No. 41 at 17.)  Although Blue Bird and NABI argue in response that no amount of discovery will save American Coach's claims, they do not challenge American Coach's factual assertions in support of its request to conduct additional discovery.  (Doc. No. 46 at 5-6.)

American Coach's generalized assertion that additional discovery "may assist the Court" in deciding the pending motion, by itself, does not justify postponing the Court's ruling on the Motion

for Summary Judgment.  *Reflectone*, 862 F.2d at 843-44.  However, discovery was delayed as a result of the parties' good-faith attempt to mediate early in the proceedings, and the discovery deadline of February 28, 2011, is more than three months away.  (Doc. No. 41 at 17; Doc. No. 26 at 1).  In view of these facts and in the interest of justice, the Court will defer the formal entry of an order on the Motion for Summary Judgment pending oral argument as described below.  The Court will grant the parties leave to supplement the record with additional evidence and memoranda of law pertinent to the deferred claims, and the Court will entertain oral argument before ruling on the pending Motion for Summary Judgment.

### III.  Counts I & VII: Breach of Sales Contract by NABI and American Coach

In Counts I and VII of the Complaint, American Coach alleges that NABI and American Coach, respectively, breached the sales contract for the subject buses ("Sales Contract") by failing to provide replacement parts to American Coach.  (Doc. No. 1 ¶¶ 36, 103.)  American Coach asserts in the Complaint that "[w]hile a written contract exists, a copy was not located to attach to this Complaint at this time, however, Plaintiff expects that a copy of the written contract will be produced during discovery and filed with the Court at that time."  (*Id.* ¶ 11 n.1.)  As of the date of this Order, the Sales Contract has not been filed in the record.

Blue Bird concedes that it was a party to the Sales Contract, (Doc. No. 18 ¶ 94), and it is undisputed that NABI did not manufacture or sell the subject buses.  (Doc. No. 34-1 ¶¶ 4-6.)  However, these facts, without any evidence of the terms of the Sales Contract, do not permit the Court to determine whether Blue Bird and NABI are contractually obligated to provide replacement parts for the subject buses.  If neither Blue Bird nor NABI are obligated to provide replacement parts for the subject buses, then there would be no breach of the Sales Contract for failure to provide

replacement parts.  *See Kuritzky v. Emory University*, 669 S.E.2d 179, 181 (Ga. Ct. App. 2008) (providing that breach is an element of a claim for breach of contract); *Knowles v. C.I.T. Corp.*, 346 So. 2d 1042, 1043 (Fla. 1st DCA 1977) ("It is elementary that in order to recover on a claim for breach of contract the burden is upon the claimant to prove by a preponderance of the evidence the existence of a contract, a breach thereof and damages flowing from the breach.").

The Court will defer ruling on these claims to afford American Coach an opportunity to supplement the record with the Sales Contract and any other evidence showing that Blue Bird and NABI are obligated to provide replacement parts.  Should American Coach fail to produce evidence creating a genuine issue of material fact by the deadlines established below, summary judgment will be granted for Defendants on Counts I and VII.  *See Celotex Corp.*, 477 U.S. at 322 (noting that summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial").

## IV.  Counts II - III: Breach of Implied Warranties by NABI

NABI argues that it should be granted summary judgment on American Coach's claims of breach of the implied warranties of merchantability and fitness for a particular purpose in Counts II and III because NABI did not sell the subject buses to American Coach.  (Doc. No. 33 at 8.)

The implied warranties of merchantability and fitness for a particular purpose are warranties imposed by law on a seller of goods.  Fla. Stat. §§ 672.314-.315; O.C.G.A. §§ 11-2-314 to -315.  Thus, only the seller of goods can be liable for breach of implied warranties.  *See, e.g.*, *McQuiston v. K-Mart Corp.*, 796 F.2d 1346, 1347-48 (11th Cir. 1986) (applying Florida law); *Gee v. Chattahoochee Tractor Sales, Inc.*, 323 S.E.2d 176, 178 (Ga. Ct. App. 1984).  It is undisputed that

Blue Bird, not NABI, manufactured, sold, and delivered the subject buses to American Coach. (Doc. No. 34-1 ¶¶ 4-6.)  Because NABI did not sell the subject buses to American Coach, NABI cannot liable to American Coach for breach of the implied warranties of merchantability and fitness for a particular purpose.  Accordingly, summary judgment should be granted for NABI on the breach of implied warranty claims in Counts II and III of the Complaint.

## V.  Counts VIII - IX: Breach of Implied Warranties by Blue Bird

Blue Bird asserts that American Coach's claims for breach of the implied warranties of merchantability and fitness for a particular purpose are barred by the Limited Warranty's disclaimer of the warranties of merchantability and fitness for a particular purpose.  (Doc. No. 33 at 8-9.)

The burden of proving a disclaimer of warranty rests on the seller of goods.  *See, e.g.*, *Ga. Timberlands, Inc. v. S. Airways Co.*, 188 S.E.2d 108, 110 (Ga. Ct. App. 1972) (placing the burden of proof on the seller to show that the asserted disclaimer of warranties applied).  Although the Limited Warranty submitted by Blue Bird lawfully disclaims the implied warranties of merchantability and fitness for a particular purpose,[4] the Court cannot conclude at this stage of the proceedings that the Limited Warranty governs the subject buses.

Ernest Lee asserts that "[i]n connection with the sale and delivery of the [subject buses], Blue Bird issued its standard Limited Warranty" and that "[a]s a matter of general practice, a copy of the

---

[4] The Limited Warranty is governed by Georgia law pursuant to its choice of law provision. (Doc. No. 34-1 at 16.)   The bold, capitalized language of the third paragraph of the Limited Warranty is "conspicuous" under O.C.G.A. § 11-1-201(10)(B) and constitutes a valid disclaimer of the implied warranties of merchantability and fitness for a particular purpose under O.C.G.A. § 11-2-316(2).  *See Steele v. Gold Kist, Inc.*, 368 S.E.2d 196, 197 (Ga. Ct. App. 1988) (finding that a written disclaimer stating in capital letters that retailer had made no warranties, express or implied, including merchantability or fitness for particular purpose, except as expressly stated, precluded consumer's action against retailer for breach of the implied warranties of merchantability and fitness under O.C.G.A. § 11-2-316(2)).

Limited Warranty would have been delivered with each of the [subject buses]." (Doc. No. 34-1 ¶ 8.)  Brian Dickson maintains that he could not find the Limited Warranty in American Coach's records.  (Doc. No. 42 ¶ 3.)  In view of Dickson's unsuccessful search for the Limited Warranty in American Coach's records,[5] a fact finder could reasonably infer that American Coach did not receive the Limited Warranty "issued" by Blue Bird.  However, it is unclear whether Blue Bird must prove that American Coach received the Limited Warranty in order to establish that the Limited Warranty applies to the subject buses.  A sales contract may provide the buyer's assent to the terms of the express warranty, Fla. Stat. § 672.313, cmt. 2, but at this stage of the proceedings, the Sales Contract between Blue Bird and American Coach has not been provided by any party to the Court. Accordingly, the parties are directed to provide a copy of the Sales Contract, if it exists, to the Court, to brief the elements that Blue Bird must prove to establish that the Limited Warranty governs the subject buses, and to discuss whether the evidence of record presents a genuine issue of material fact on that issue.

## VI.  Count IV: Breach of Express Warranty by NABI

In Count IV of the Complaint, American Coach contends that NABI breached oral and written express warranties that the subject buses would be free from defects in material and workmanship for two years or 100,000 miles, whichever occurs first, and that the subject buses would be suitable for the purpose for which they were purchased.  (Doc. No. 1 at 11-12.)  NABI

---

[5] American Coach argues that there is a genuine issue of material fact regarding whether the Limited Warranty governs the subject buses in view of Dickson's assertion that the Miami Warranty contains "different and/or additional language" than the Limited Warranty.  (Doc. No. 41 at 5-7; Doc. No. 42 ¶ 3.)  The Court disagrees.  Because the Miami Warranty is not attached to Dickson's affidavit or disclosed elsewhere in the record, the Court cannot determine whether the unspecified "different and/or additional language" between the Limited and Miami Warranties is relevant to any issue in this case.

argues that it should be granted summary judgment on this claim because NABI lacked contractual privity with American Coach.  (Doc. No. 33 at 8.)

Even if the Limited Warranty governs the subject buses, the Limited Warranty does not appear to mention, let alone obligate, NABI.  (Doc. No. 34-1 at 16.)  Therefore, NABI should not be liable to American Coach for breach of the Limited Warranty.  *See, e.g.*, *O'Connell v. Cora Bett Thomas Realty, Inc.*, 563 S.E.2d 167, 170 (Ga. Ct. App. 2002) (finding that an entity not a party to a contract could not be liable for its breach); *Preve v. Albert*, 578 So. 2d 33, 34 (Fla. 4th DCA 1991) (reversing a breach of contract finding against the appellant where she did not sign the contract and thus was not a party to the contract); *In re Donner's Estate*, 364 So. 2d 742, 749 (Fla. 3d DCA 1978) ("[A] contract cannot bind one who is not a party thereto since to create a valid contract there must be reciprocal assent to a certain and definite proposition." (citing *Strong & Trowbridge Co. v. H. Baars & Co.*, 54 So. 92 (Fla. 1910))).

Notwithstanding the Limited Warranty, American Coach maintains that NABI expressly warranted the subject buses to American Coach through its statements concerning repairs and delivery of replacement parts.  (Doc. No. 41 at 8-12.)  The Court disagrees.  As discussed below, NABI is not liable to American Coach for breach of express warranty because NABI's statements to American Coach concerning the subject buses upon which American Coach relies did not create an express warranty or, alternatively, because NABI and American Coach do not appear to have been in contractual privity, and no exception to the contractual privity rule has been shown to apply.

## A.  Creation of Express Warranty

Pursuant to Fla. Stat. § 672.313, and O.C.G.A. § 11-2-313, an express warranty is created by the following:

(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

(c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

In view of these provisions, an express warranty is created only by actions forming "part of the basis of the bargain."[6] *Accord* U.C.C. § 2-313, cmt. 1 ("Express warranties rest on 'dickered' aspects of the individual bargain . . . ."). The parties do not cite, and the Court does not find, any Florida or Georgia law to the contrary.

The breach of express warranty claim against NABI should fail because there is no evidence that NABI made any statements, representations, or promises to American Coach forming "part of the basis of the bargain" for the subject buses. Blue Bird, not NABI, manufactured and sold the subject buses to American Coach. (Doc. No. 34-1 ¶¶ 4-6.) Blue Bird referred American Coach to NABI when, after delivery of the subject buses, American Coach discovered and reported mechanical problems to Blue Bird. (Doc. No. 42 ¶¶ 5, 7; Doc. No. 43 ¶ 3.) Because all statements of record by NABI to American Coach regarding the subject buses were made after the buses were delivered to American Coach, (Doc. No. 42 ¶¶ 8-16; Doc. No. 43 ¶¶ 4-11), NABI's statements to American Coach were not part of the "basis of the bargain" and thus did not create an express warranty under Florida or Georgia law. Absent an express warranty by NABI to American Coach, American Coach's claim for breach of express warranty against NABI would fail.

---

[6] Although both of these statutes concern express warranties created by the "seller," the exceptions to the privity requirement discussed *infra* part VI.B show that an express warranty may be created by a person or entity other than the seller under limited circumstances.

### B.  Privity

It is undisputed that Blue Bird, not NABI, manufactured, sold, and delivered the subject buses to American Coach.  (Doc. No. 34-1 ¶¶ 4-6.)  In view of this evidence, and finding no evidence to the contrary, American Coach and NABI were not in contractual privity regarding the purchase and sale of the subject buses.

Contractual privity is generally required to establish breach of an express warranty under Florida and Georgia law.  *See, e.g.*, *Levine v. Wyeth Inc.*, 684 F. Supp. 2d 1338, 1345 (M.D. Fla. 2010) (collecting Florida cases); *Weiss v. Johansen*, 898 So. 2d 1009, 1012 (Fla. 4th DCA 2005); *Ellis v. Rich's, Inc.*, 212 S.E.2d 373, 376 (Ga. 1975).  As discussed below, although both states' jurisprudence is clouded by exceptions to the contractual privity requirement, no exception under Georgia or Florida law appears to apply here.

#### 1.  Georgia Law

In *Stewart v. Gainesville Glass Co., Inc.*, 206 S.E.2d 857 (Ga. Ct. App. 1974), the Georgia Court of Appeals ruled that a consumer who purchased windows from a local dealer could not enforce the manufacturer's ten year warranty because the consumer had no privity with the manufacturer.  *Id.* at 860.  This decision was affirmed by the Georgia Supreme Court in a one-paragraph opinion holding that contractual privity was required to claim breach of an express warranty except as provided in O.C.G.A. § 11-2-318 and except where the warranty "clearly extends to some identifiable third person," meaning a third-party beneficiary.  *Stewart v. Gainesville Glass Co., Inc.*, 212 S.E.2d 377, 377 (Ga. 1975).

Although no case has explicitly modified the general rule and two exceptions stated in *Stewart*, a line of Georgia cases appears to carve out a third exception to the privity requirement.

In *Jones v. Cranman's Sporting Goods*, 237 S.E.2d 402 (Ga. Ct. App. 1977), an express warranty included in the papers accompanying a defective rifle by the manufacturer/distributor[7] of the gun was enforced against the manufacturer/distributor, notwithstanding the fact that the plaintiff purchased the rifle from a sporting goods store, not the manufacturer/distributor.  The result was based on the extension of the following principle beyond the context of an automobile purchase: "[w]here an automobile manufacturer, through its authorized dealer issues to a purchaser of one of its automobiles from such dealer admittedly as a part of the sale a warranty by the manufacturer running to the purchaser, privity exists . . . ." *Jones*, 237 S.E.2d at 405 (quoting *Chrysler Corp. v. Wilson Plumbing, Co.*, 208 S.E.2d 321, 323 (Ga. Ct. App. 1974)).  Although the warranty card accompanying the rifle in *Jones* was included in the papers that came with the gun by the manufacturer/distributor, not an authorized dealer, the court found the case to be analogous to *Wilson Plumbing*, reasoning that because "[t]he weapon here was 'fully guaranteed' by the distributor to the ultimate consumer, . . . it became part of the bargain of sale and thus privity existed." *Id.* at 406.  To the extent *Jones* creates a third exception to the privity requirement for an express warranty under *Stewart*, such exception is limited to cases where the express warranty is "part of the bargain of sale." *Id.*; *cf. EMJ Corp. v. Laticrete Int'l, Inc.*, 934 F. Supp. 430, 433-34 (M.D. Ga. 1996) (noting that this result "seems to eliminate the privity requirement almost entirely, since a purchaser could easily characterize any warranty as a part of the 'bargain of sale' and thus establish privity with the manufacturer.").

---

[7] The manufacturer, not the distributor, warranted the gun in *Jones*.  *Jones*, 237 S.E.2d at 405.  However, the court in *Jones* presumed on the motion for summary judgment that the manufacturer and distributor were alter egos and thus considered each of their actions attributable to the other.  *Id.*

The evidence of record does not satisfy any of the three exceptions to the requirement of contractual privity to establish breach of an express warranty.  First, the third-party privity provisions under O.C.G.A. § 11-2-318 do not apply here.  Pursuant to O.C.G.A. § 11-2-318, a seller's express or implied warranty extends to the buyer's family, household, and guests who foreseeably use, consume, or are affected by the purchased goods.  Because there is no evidence of record that NABI sold the subject buses to American Coach, (Doc. No. 34-1 ¶ 6), this exception does not appear to apply.

Second, American Coach is not a third-party beneficiary to any express warranty because there is no evidence that NABI promised Blue Bird or any other party to act or perform for the benefit of American Coach.  *See Stewart*, 206 S.E.2d at 753 ("A third-party beneficiary contract is one in which the promisor engages to the promisee to render some performance to a third person." (citation omitted)).  Third, the *Jones* exception does not apply here because there is no evidence in the record that NABI's statements to American Coach formed "part of the bargain of sale" for the subject buses.  *See supra* part VI.A (noting that there is no evidence of record that NABI made any statements, representations, or promises to American Coach as "part of the basis of the bargain" for the subject buses).  Accordingly, there is no factual basis in the record for finding an exception to the contractual privity requirement under Georgia law.

### 2.  Florida Law

In addition to the statutory third-party privity exception which does not apply here,[8] Florida law provides an exception to the privity requirement where a buyer relies on "direct contacts" with a manufacturer in purchasing a product.  In *Cedars of Lebanon Hosp. Corp. v. European X-Ray Distribs. of Am., Inc.*, 444 So. 2d 1068 (Fla. 3d DCA 1984), the Florida District Court of Appeal found that privity existed between a manufacturer and a buyer, notwithstanding that the seller was a third-party distributor, where the manufacturer's representative made direct contact with the buyer and where the buyer relied on representations directly from the manufacturer's representative in purchasing the product from the distributor.  *Id.* at 1072.  The court emphasized that had there been no "direct contacts" between the manufacturer and buyer, there would have been no privity and no viable claim for breach of an express warranty.  *Id.* at 1072 n.4.  Similarly, in *ISK Biotech Corp. v. Douberly*, 640 So. 2d 85 (Fla. 1st DCA 1994), the Florida District Court of Appeal sustained a claim for breach of express warranty against a manufacturer where the manufacturer informed the seller that it could assure buyers that the fungicide would not destroy watermelon crops and where the plaintiff purchased the fungicide relying on such advice from the seller.  *Id.* at 87-88.  These cases and others stand for the proposition that a manufacturer, although not the ultimate seller of the product, may expressly warrant a product through "direct contacts" with the buyer upon which the buyer relies in purchasing the product.  *See, e.g.*, *Smith v. Wm. Wrigley Jr. Co.*, 663 F. Supp. 2d

---

[8] Section 672.318, Florida Statutes, provides that a buyer's family, household, guests, employees, agents, and servants who foreseeably use, consume, or are affected by the purchased goods may hold a seller liable for an express or implied warranty despite the absence of privity. Like the third-party privity exception under Georgia law, the third-party privity exception under Florida law is inapplicable because it does not appear that NABI sold the subject buses.  *See supra* part VI.B.1.

1336, 1341-42 (S.D. Fla. 2009) (finding a well-pled claim for breach of express warranty against a chewing gum company where the plaintiff alleged that the company advertised the gum as "scientifically proven to help kill the germs that cause bad breath," that there was no scientific proof to substantiate the advertisement, and that the plaintiff purchased gum in reliance on the advertisement); *cf. Spolski Gen. Contractor, Inc. v. Jett-Aire Corp. Aviation Mgmt. of Cent. Fla., Inc.*, 637 So. 2d 968, 970 (Fla. 5th DCA 1994) (holding that a manufacturer of floor paint was not liable to a general contractor for breach of express warranty where there was no sale from the manufacturer to the contractor, no privity between them, no contract between them, and no reliance by the contractor on any warranty from the manufacturer).

The instant case does not fit within the "direct contacts" exception to the privity requirement for two reasons.  First, Blue Bird, not NABI, has been shown to have manufactured and sold the subject buses.  (Doc. No. 34-1 ¶¶ 4-6.)  Second, as discussed *supra* part VI.A, there is no evidence in the record that American Coach relied on any statements or representations by NABI in purchasing the subject buses.  Rather, Blue Bird introduced American Coach to NABI *after* the subject buses were delivered to American Coach and mechanical problems were discovered.  (Doc. No. 42 ¶¶ 5, 7.)  Accordingly, no exception to the contractual privity requirement for a breach of express warranty claim under Florida law appears to apply here.

In summary, NABI should be granted summary judgment on the breach of express warranty claim in Count IV due to the absence of an express warranty by NABI to American Coach or, alternatively, due to the lack of privity between NABI and American Coach or an exception to the privity requirement.

## VII.  Count X: Breach of Express Warranty Against Blue Bird

Blue Bird argues that the claim for breach of express warranty against it is barred by the one-year limitations period set forth in the Limited Warranty.  (Doc. No. 33 at 9-12.)  This argument will not be addressed at this stage of the proceedings because, as discussed *supra* part V, Blue Bird has not established that the Limited Warranty governs the subject buses.

Although Blue Bird carries the burden of proving that the Limited Warranty governs the subject buses, American Coach bears the initial burden of proving the existence of an express warranty for the subject buses and Blue Bird's breach of that warranty.  *See State Farm Ins. Co. v. Nu Prime Roll-A-Way of Miami*, 557 So. 2d 107, 108 (Fla. 3d DCA 1990) ("The burden of proof is on the plaintiff to show facts giving rise to a warranty, but a jury must ultimately determine that issue." (citing *Boehm v. Fox*, 473 F.2d 445, 449 (10th Cir. 1973))); *Fender v. Colonial Stores, Inc.*, 225 S.E.2d 691, 693 (Ga. Ct. App. 1976) ("An action based on breach of warranty necessitates a showing of the existence of the warranty, the fact that the warranty was broken and that the breach of the warranty was the proximate cause of the loss sustained." (citation omitted)).  Blue Bird concedes that it provided American Coach "a written, limited warranty for the subject buses," (Doc. No. 18 ¶ 130), but American Coach has not produced the express warranty upon which it sues or any evidence creating a genuine issue of material fact regarding the terms of the express warranty and Blue Bird's breach of those terms.  If the record does not contain evidence supporting the existence of an express warranty or evidence creating a genuine issue of material fact on the terms and provisions of such express warranty, the Court must enter summary judgment for Blue Bird on the breach of express warranty claim.  *See Celotex Corp.*, 477 U.S. at 322 (noting that summary judgment must be granted "against a party who fails to make a showing sufficient to establish the

existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial").

## VIII.  Formation of "Oral Agreement for Warranty Work"

Notwithstanding the claims against NABI and Blue Bird for breach of implied and express warranties, American Coach argues that there is a genuine issue of material fact concerning whether NABI, Blue Bird, and American Coach entered into "freestanding, oral, enforceable contract agreements to provide service, support, and replacement parts."[9]  (Doc. No. 41 at 14.)

The elements of a breach of contract action are: (1) a valid contract; (2) a material breach; and (3) damages. *Beck v. Lazard Freres & Co., LLC*, 175 F.3d 913, 914 (11th Cir. 1999).  A valid contract consists of "offer, acceptance, consideration, and sufficient specification of the essential terms."  *St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004) (citing *W.R. Townsend Contracting, Inc. v. Jensen Civil Constr., Inc.*, 728 So. 2d 297, 302 (Fla. 1st DCA 1999)); *see also* O.C.G.A. § 13-3-1 ("To constitute a valid contract, there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contact can operate.").

After American Coach purchased the subject buses, it was assured by an unspecified person that Blue Bird's discontinuation of the subject buses' model would not affect American Coach's ability to obtain replacement parts "in a timely fashion." (Doc. No. 42 ¶ 4.) Michael Pierce asserted that he "was told by representatives of both Blue Bird and NABI that they would resolve" the mechanical issues with the subject buses and obtain replacement parts.  (Doc. No. 43 ¶ 4.)  Pierce

---

[9] Although American Coach did not assert this claim in the Complaint, (Doc. No. 1), neither Blue Bird nor NABI have objected to the consideration of this claim on summary judgment.  (Doc. No. 46.)  Therefore, the Court has considered the merits of the claim.

also "was assured [by an unspecified individual] that NABI would resolve" the mechanical issues with the subject buses.  (*Id.* ¶ 11.)  John Lewis asked Pierce "for the most critical parts which American Coach needed to get [the] buses back in service to help focus their efforts."  (*Id.* ¶ 8.)

Representatives of both Blue Bird and NABI made similar statements to Brian Dickson. Dickson asserted that "[o]n an ongoing basis, American Coach was told by representatives of both Blue Bird and NABI that they would resolve the issues" with the subject buses.  (Doc. No. 42 ¶ 7.) Dickson met with James Bernacchi of NABI, who "represented that he could – and would – resolve these issues."  (*Id.* ¶ 10.)  Jack Kemp told Dickson that "he would help" in response to Dickson's complaint that lead times for parts exceeded fourteen months.  (*Id.* ¶ 12.)  Dickson further maintains that he "was told . . . that NABI and Blue Bird would resolve the problems" in response to contacting NABI and Blue Bird on March 13, 2009 about a bus that had been out of service for several months and for which parts had been promised by March 1, 2009 but had not been delivered. (*Id.* ¶ 13.)  NABI responded to American Coach's request that NABI buy back the subject buses due to the degree of mechanical problems by "ask[ing] for part numbers and offer[ing] to help."  (*Id.* ¶ 14.)  Buddy Cox told American Coach that NABI would "resolve the problems" associated with the subject buses.  (*Id.* ¶ 15.)  Pierce and Dickson maintain that based on the above-referenced statements, American Coach relied on Blue Bird and NABI to repair the subject buses and provide replacement parts as promised.  (*Id.* ¶ 18; Doc. No. 43 ¶ 13.)

Even if the foregoing assurances of Blue Bird and NABI, either in its own capacity or as an agent of Blue Bird,[10] constituted an offer that was accepted by American Coach, there is no showing in the record of consideration, and therefore there is no enforceable contract due to a lack of consideration. "To satisfy the consideration requirement under Georgia law, an accepting party to a contract can either tender bargained-for performance or make a mutual promise." *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008) (citing O.C.G.A. § 13-3-42). Similarly, consideration under Florida law is established by performance or a promise to perform. *See Palm Lake Partners II, LLC v. C & C Powerline, Inc.*, 38 So. 3d 844, 851 n.10 (Fla. 1st DCA 2010) ("[A] promise, no matter how slight, qualifies as consideration," so long as "the promisor agrees to do something that he or she is not already obligated to do.") (quoting *Cintas Corp. No. 2 v. Schwalier*, 901 So. 2d 307, 309 (Fla. 1st DCA 2005))); *Ballou v. Campbell*, 179 So. 2d 228, 230 (Fla. 2d DCA 1965) (noting that consideration includes a promise or a specific act or forbearance) (quotation omitted)).

---

[10] There is sufficient evidence in the record from which a reasonable fact finder could conclude that NABI was the apparent agent of Blue Bird regarding repairs to the subject buses. Three elements are needed to establish apparent agency: (1) a representation by the purported principal; (2) reliance on that representation by a third party; and (3) a change in position by the third party in reliance upon such representation. *Mobil Oil Corp. v. Bransford*, 648 So. 2d 119, 121 (Fla. 1995); *Richmond Cnty. Hosp. Auth. v. Brown*, 361 S.E.164, 166 (Ga. 1987) (quoting Restatement of Agency § 267). Blue Bird represented to American Coach that NABI was its agent by referring American Coach to NABI when American Coach first reported mechanical defects to Blue Bird. (Doc. No. 42 ¶¶ 5, 7.) A reasonable fact finder could conclude that American Coach changed its position in reasonable reliance on Blue Bird's referral of NABI by communicating with NABI and relying on NABI to make repairs and deliver replacement parts. (*Id.* ¶¶ 8-15, 18.) Because the evidence of record, when viewed in the light most favorable to American Coach, establishes the elements of apparent agency, the Court may attribute NABI's conduct and statements regarding the repair of the subject buses to Blue Bird for purposes of the Motion for Summary Judgment.

There is no evidence in the record that American Coach made a promise to NABI or to Blue Bird or took any action for the benefit of NABI or Blue Bird in exchange for a promise to repair and provide replacement parts for the subject buses.  Absent any consideration provided by American Coach, no enforceable contract can be formed between American Coach and NABI or Blue Bird for repair of the subject buses other than the "written, limited warranty" provided by Blue Bird.  (Doc. No. 18 ¶ 130.)

## IX.  Enforceable Promise to Repair Buses and Provide Replacement Parts

American Coach contends that "[p]romises made by Blue Bird and NABI after the purchase of the subject buses [to] fix mechanical problems and [to] provide replacement parts are enforceable . . . ." (Doc. No. 41 at 14.)  This assertion sounds in promissory estoppel.[11]

The doctrine of promissory estoppel provides that "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."  O.C.G.A. § 13-3-44(a); *W.R. Grace & Co. v. Geodata Servs., Inc.*, 547 So. 2d 919, 924 (Fla. 1989) (citing Restatement (Second) Contracts § 90 (1979)).  The character of the reliance protected by promissory estoppel is explained as follows:

> The promisor is affected only by reliance which he does or should foresee, and enforcement must be necessary to avoid injustice. Satisfaction of the latter requirement may depend on the reasonableness of the promisee's reliance, on its definite and substantial character in relation to the remedy sought, on the formality with which the promise is made, on the extent to which the evidentiary, cautionary, deterrent and channeling functions of form are met by the commercial setting or

---

[11] Although American Coach did not assert a claim for promissory estoppel in the Complaint, (Doc. No. 1), neither Blue Bird nor NABI have objected to the consideration of this claim on summary judgment.  (Doc. No. 46.)  Therefore, the Court has considered the merits of the claim.

otherwise, and on the extent to which such other policies as the enforcement of bargains and the prevention of unjust enrichment are relevant.

*W.R. Grace*, 547 So. 2d at 924  (quoting Restatement (Second) Contracts § 90 (1979)).

As reflected in the explication of promissory estoppel provided by Section 90 of the Restatement (Second) of Contracts, there can be no promissory estoppel unless the terms of the promise are definite in relation to the remedy sought.  *Vencor Hosps. v. Blue Cross Blue Shield of R.I.*, 284 F.3d 1174, 1185 (11th Cir. 2002) (applying Florida law); *see also Voyles v. Sasser*, 472 S.E.2d 80, 82 (Ga. Ct. App. 1996) (rejecting a promissory estoppel claim due to the indefiniteness of the promise allegedly relied upon).  Even if Blue Bird and NABI made promises to American Coach by "offer[ing] to resolve the issues" with the subject buses and stating that they "could – and would – resolve . . . issues" and that they "would help," (Doc. No. 42 ¶¶ 7-15), such promises are indefinite because they failed to disclose what actions Blue Bird and NABI would take and when such actions would be taken.  *See Hygema v. Markley*, 187 So. 373, 380 (Fla. 1939) (rejecting the alleged promise as the basis for promissory estoppel because it "was entirely indefinite as to terms and time"); *Voyles*, 472 S.E.2d at 81-82 (finding promissory estoppel inapplicable because the seller's alleged promise to the buyer of an insurance agency that the agency would "continue to service [the seller's] insurance needs as it had prior to sale" was not sufficiently definite in time to justify buyer's reliance on it).  Although downtimes for buses ranged from days to months and lead times for repair parts were up to fourteen weeks, (Doc. No. 42 ¶ 12), there is no evidence in the record that Blue Bird or NABI promised American Coach repair and lead times less than this duration or of any specific duration.  "[T]o apply the doctrine of promissory estoppel to facts which are not sufficiently definite 'in time or term or reasonableness' would 'wreak havoc with basic contract law.'"  *Bergman v. DeIulio*, 826 So. 2d 500, 504 (Fla. 4th DCA 2002) (quoting *W.R. Grace*,

547 So. 2d at 925).  Absent a definite and substantial promise to repair the subject buses and provide replacement parts, the doctrine of promissory estoppel is inapplicable.

In addition to being indefinite, assurances that Blue Bird and NABI "could – and would – resolve . . . issues" and that it "would help" are insufficient to support a claim of promissory estoppel because those statements concern the present intent of Blue Bird and NABI with regard to future acts and because there is no evidence of the intent of NABI and Blue Bird when they made those statements.  (*Id.* ¶¶ 10, 12-16); *see W.R. Grace*, 547 So. 2d at 924 ("[O]rdinarily, a truthful statement as to the present intention of a party with regard to his future act is not the foundation upon which an estoppel may be built." (quoting *S. Inv. Corp. v. Norton*, 57 So. 2d 1, 3 (Fla. 1952)).

In summary, to the extent American Coach asserts a claim of promissory estoppel against NABI and Blue Bird arising out of promises to provide replacement parts and repairs, summary judgment should be granted for NABI and Blue Bird.

## X.  Counts V, VI, XI, XII: Negligence and Strict Liability Against NABI and Blue Bird

Defendants contend that the negligence and strict liability claims against them are barred by the economic loss rule.  (Doc. No. 33 at 12-13.)  American Coach argues that the economic loss rule does not apply because "the allegations are based, in part, on acts that occurred after the purchase of the subject buses and are based on servicing and repair of the buses, not the purchase itself." (Doc. No. 41 at 16.)

The economic loss rule is a judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses.  *Indem. Ins. Co. of N.A. v. Am. Aviation, Inc.*, 891 So. 2d 532, 536 (Fla. 2004).  "Economic losses are, simply put, disappointed economic expectations." *Am. Aviation*, 891 So. 2d at 536 n.1.  They include "damages

for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits." *Id.* at 536 n.1 (quoting *Casa Clara Condo. Ass'n, Inc. v. Charley Toppino & Sons, Inc.,* 620 So. 2d 1244, 1246 (Fla. 1993)).  "In the specific context of products liability, economic loss includes 'the diminution in the value of the product because it is inferior in quality and does not work for the general purposes for which is was manufactured or sold.'"  *Id.* (quoting *Casa Clara*, 620 So. 2d at 1246).  "Economic loss has also been defined more broadly as the loss of the 'benefit of [the] bargain.'"  *Id.* (quoting *Casa Clara*, 620 So. 2d at 1246).

The economic loss rule applies in two situations: (1) where the parties are in contractual privity and one party seeks to recover damages in tort for matters arising out of the contract; or (2) where the defendant is a manufacturer or distributor of a defective product which damages itself but does not cause personal injury or damage to any other property.  *Curd v. Mosaic Fertilizer, LLC,* 39 So. 3d 1216, 1223 (Fla. 2010) (citing *Am. Aviation*, 891 So. 2d at 536); *Gen. Elec. Co. v. Lowe's Home Centers, Inc.,* 608 S.E.2d 636, 637-38 (Ga. 2005).  These two situations have been named the contractual economic loss rule and the products liability economic loss rule, respectively.  *Curd*, 39 So. 3d at 1223.  Both economic loss rules have exceptions, but none have been shown to apply here.[12]

---

[12] The economic loss rule does not apply to torts independent of a breach of contract, such as fraudulent inducement and negligent misrepresentation.  *Am. Aviation*, 891 So. 2d at 537; *Moransais v. Heathman*, 744 So. 2d 973, 981 (Fla. 1999); *see also ASC Const. Equip. USA, Inc. v. City Commercial Real Estate, Inc.*, 693 S.E.2d 559, 566 (Ga. Ct. App. 2010) (holding that economic loss rule did not bar a claim for negligent misrepresentation where losses were purely economic). The rule also does not apply to allegations of "neglect in providing professional services."  *Am. Aviation*, 891 So. 2d at 537 (citing *Moransais*, 744 So. 2d at 983); *see also Hamilton v. Powell, Goldstein, Frazer & Murphy,* 306 S.E.2d 340, 342 (Ga. Ct. App. 1983) (recognizing tort claims for attorney malpractice arising from duty imposed by law, rather than by contract).  Nor does the economic loss rule "prevent the bringing of an action and recovery for intentional torts, such as,
(continued...)

In view of the two forms of the economic loss rule, American Coach correctly argues that the applicability of the economic loss rule depends upon whether the allegedly tortious conduct concerns the manufacture of the subject buses or the subsequent repair of the subject buses.  (Doc. No. 41 at 16.)  Finding no objection by Defendants to American Coach raising issues beyond the pleadings, the Court has considered whether the economic loss rule bars the following tort claims by American Coach:  (1) negligent manufacturing of the subject buses against NABI; (2) negligent repair of the subject buses against NABI; (3) strict liability against NABI; (4) negligent manufacturing of the subject buses against Blue Bird; (5) negligence repair of the subject buses against Blue Bird; (6) strict liability against Blue Bird.[13]

---

(...continued)

fraud, conversion, intentional interference, civil theft, abuse of process, and other torts requiring proof of intent."  *Curd*, 39 So. 3d at 1233 (citing *Am. Aviation*, 891 So. 2d at 543).  In addition, Georgia courts recognize an "accident exception" to the economic loss rule, under which "loss stemming from defects that cause accidents of violence or collision with external objects is treated as physical injury" which may be recovered in tort, whereas "[d]efects of quality, evidenced by internal deterioration or breakdown," are considered economic loss that cannot be recovered pursuant to the economic loss rule. *Vulcan Materials Co., Inc. v. Driltech, Inc.*, 306 S.E.2d 253, 255 (Ga. 1983).

Notwithstanding American Coach's argument that unpled fraudulent inducement and negligent misrepresentation claims may be viable with additional discovery, American Coach has produced no evidence supporting any of the exceptions to the economic loss rule.  (Doc. No. 41 at 16-17.)  Although one of the subject buses was in an "accident," (Doc. No. 42 ¶ 12), the evidence of record does not show that the accident involved damage satisfying the accident exception to the economic loss rule under Georgia law.

[13] The Complaint does not contain tort claims based on duties arising after the buses were purchased.  (*See* Doc. No. 1 ¶ 138 (alleging that "[a]t the time that the buses were purchased under the contract between the parties, Blue Bird had a duty to ensure that the subject buses were suitable for the purpose for which they were purchased and were free of defects and unreasonable mechanical problems"); *id.* ¶ 74 (alleging that NABI "had a duty to ensure that the subject buses were suitable for the purpose for which they were purchased [and] were free of defects and unreasonable mechanical problems").)

## A.  Count V:  Negligent Manufacturing Against NABI

The Court need not decide whether the economic loss rule bars American Coach's negligent manufacturing claim against NABI because that negligence claim lacks the essential element of duty.  *See, e.g.*, *Curd*, 39 So. 3d at 1227 (noting that the existence of a legal duty is an essential element of a negligence claim); *Underwood v. Select Tire, Inc.*, 676 S.E.2d 262, 267 (Ga. Ct. App. 2009) (same).  Because NABI did not manufacture the subject buses, (Doc. No. 34-1 ¶¶ 4-6), NABI owed American Coach no duty with respect to the manufacturing of the subject buses.  *Cf. Borda v. East Coast Entm't, Inc.*, 950 So. 2d 488, 491 (Fla. 4th DCA 2007) ("Florida . . . recognizes that a legal duty will arise whenever a human endeavor creates a generalized and foreseeable risk of harming others." (quoting *McCain v. Fla. Power Corp.*, 593 So. 2d 500, 503 (Fla. 1992)); *Ponse v. Atlanta Cas. Co.*, 563 S.E.2d 499, 502 (Ga. Ct. App. 2002) ("[W]here one undertakes an act which he has no duty to perform and another reasonably relies upon that undertaking, the act must generally be performed with ordinary or reasonable care." (citation omitted)).  Absent a legal duty, summary judgment should be granted for NABI to the extent American Coach claims that NABI negligently manufactured the subject buses.

## B.  Count V: Negligent Repair Against NABI

In view of the current evidence of record, neither the contractual economic loss rule nor the products liability economic loss rule bars American Coach's negligence claim against NABI arising out of the repair of the subject buses.  An essential element of the contractual economic loss rule is contractual privity.  *Curd*, 39 So. 3d at 1223.  Because the evidence of record does not show any valid warranty or contract for the repair subject buses between American Coach and NABI, the

contractual privity economic loss rule does not bar a claim against NABI for negligent repair of the subject buses.

The products liability economic loss rule does not depend upon the existence of contractual privity, as it bars claims against manufacturers and distributors of a defective product that damages itself but does not cause personal injury or damage to any other property. *Curd*, 39 So. 3d at 1223; *see also Am. Aviation*, 891 So. 2d at 541 (collecting cases for the proposition that contractual privity is not required to apply the products liability economic loss rule). Because the instant negligence claim alleges improper repairing, not improper manufacturing or distribution of the subject buses, the products liability economic loss rule does not bar a claim against NABI for negligent repair of the subject buses. *See Curd*, 39 So. 3d at 1223 (finding that the economic loss rule did not bar plaintiff's negligence and strict liability claims against defendants where the parties were not in contractual privity and where the defendant was not the manufacturer or distributor of a product that caused damage solely to itself). Further, this negligence claim is not barred by the economic loss rule even though American Coach's losses from the repair of the subject buses are purely economic.[14] *See Am. Aviation*, 891 So. 2d at 543 (limiting the personal and property damage requirement to cases involving contractual privity or product defect and stating that "in general, actionable conduct that frustrates economic interests should not go uncompensated solely because the harm is unaccompanied by any injury to a person or other property").

---

[14] American Coach has experienced breakdowns, service interruptions, and failures of the subject buses. (Doc. No. 43 ¶ 14.) In addition, Blue Bird and NABI have failed to provide replacement parts "either completely or within a reasonable time frame." (*Id.* ¶ 15.) Dickson and Pierce maintain that American Coach "has sustained economic losses directly attributable to the failure and/or refusal of Blue Bird and NABI to provide replacement parts in a timely fashion." (Doc. No. 42 ¶ 21; Doc. No. 43 ¶ 16.) There is no other evidence in the record on the issue of damages.

Finding no other arguments by NABI to the contrary, summary judgment should not be granted for NABI on the negligence claim in Count V to the extent American Coach alleges negligent repair of the subject buses.

### C.  Count VI: Strict Liability Against NABI

NABI argues that the strict liability claim against it for defective manufacture of the subject buses is barred by the economic loss rule.  (Doc. No. 33 at 12-14.)  Notwithstanding the applicability of the economic loss rule, the strict liability claim against NABI should fail because it has not been shown that NABI manufactured, distributed, or sold the subject buses.

Under Georgia law, a strict liability claim can be maintained only against the manufacturer of a product.  *Farmex, Inc. v. Wainwright*, 501 S.E.2d 802, 804 (1998) ("[S]trict liability is an available remedy only against a 'manufacturer.'"); *Ellis v. Rich's, Inc.*, 212 S. E.2d 373, 376 (1975) (noting that O.C.G.A. § 51-1-11(b) "preclude[s] any extension of strict liability by this court" to parties other than the manufacturer).  A "manufacturer" is an entity having "an active role in the production, design, or assembly of products and placing them in the stream of commerce." *Alltrade, Inc. v. McDonald*, 445 S.E.2d 856, 858 (Ga. Ct. App. 1994) (quoting *Freeman v. United Cities Propane Gas of Ga.*, 807 F. Supp. 1533, 1540 (M.D. Ga. 1992)).

The Florida doctrine of strict liability is broader than the Georgia doctrine.  Strict liability in Florida embraces not only manufacturers, but also "others in the distributive chain including retailers, wholesalers, . . . distributors," and commercial lessors "engaged in the business of leasing of the allegedly defective product." *Samuel Friedland Fam. Enters. v. Amoroso*, 630 So. 2d 1067, 1068, 1071 (Fla. 1994).

NABI cannot be held strictly liable under either Georgia or Florida law on the evidence of record.  NABI did not manufacture, distribute, or sell the subject buses.  (Doc. No. 34-1 ¶¶ 4-6.)  In addition, NABI did not take any actions or make any representations to American Coach regarding the subject buses until after the buses were delivered to American Coach and after American Coach reported mechanical defects in the subject buses to Blue Bird.  (Doc. No. 42 ¶¶ 5,7; Doc. No. 43 ¶ 3.)  Because NABI has not been shown to have taken any actions governed by the doctrine of strict liability, summary judgment should be granted for NABI on American Coach's strict liability claim in Count VI.

### D.  Count XI:  Negligent Manufacturing Against Blue Bird

To the extent American Coach claims that Blue Bird negligently manufactured the subject buses, that claim is barred by the products liability economic loss rule.  The products liability economic loss rule applies where "the defendant is a manufacturer or distributor of a defective product which damages itself but does not cause personal injury or damage to any other property."  *Curd*, 39 So. 3d at 1223.

There is no evidence in the record that American Coach suffered personal injury or damage to property other than the subject buses as a result of Blue Bird's manufacturing.  The record merely shows that American Coach "experienced breakdowns and service interruptions and failures of the subject buses," "experienced the failure and/or refusal of Blue Bird and NABI to provide replacement . . . parts . . . either completely or within a reasonable time frame," and "sustained economic losses directly attributable to the failure and/or refusal of Blue Bird and NABI to provide replacement parts in a timely fashion."  (Doc. No. 43 ¶¶ 14-16.)  Even if those damages are attributable to the manufacturing, as opposed to the repair of the subject buses, the losses do not

involve personal injury or damage to property other than the subject buses and are purely economic. *See Am. Aviation*, 891 So. 2d at 536 n.1 (noting that economic losses are "disappointed economic expectations," including "damages for inadequate value, costs of repair and replacement of the defective product, [and] consequent loss of profits" (citations omitted)).  Accordingly, the products liability economic loss rule would bar American Coach's negligent manufacturing claim against Blue Bird.

### E.  Count XI: Negligent Repair Against Blue Bird

The application of the economic loss rule to American Coach's negligent repair claim against Blue Bird depends upon whether an express warranty governs the repairs at issue.  Any claim arising from repairs covered by an express warranty would be barred by the contractual privity economic loss rule, which applies "where the parties are in contractual privity and one party seeks to recover damages in tort for matters arising out of the contract."  *Curd*, 39 So. 3d at 1223.

As discussed *supra* part V, the terms of the express warranty given by Blue Bird for the subject buses are unclear.  Therefore, the Court cannot determine at this stage of the proceedings whether the negligent repair claim against Blue Bird is barred by the contractual privity economic loss rule.[15]

### F.  Count XII: Strict Liability Against Blue Bird

The economic loss rule applies with the same force and effect to negligence and strict liability claims.  *See Flintkote Co. v. Dravo Corp.*, 678 F.2d 942, 946 (11th Cir. 1982) (noting that under Georgia law, the economic loss rule bars claims of both negligence and strict liability where

---

[15] Because this claim concerns the negligent repair, as opposed to manufacture, of the subject buses, the product liability economic loss rule would not apply.  *See supra* part X.B.

the only damages are to the defective product itself (citing *Chrysler Corp. v. C. C. Taylor*, 234 S.E.2d 123, 124 (Ga. Ct. App. 1977))); *Fla. Power & Light Co. v. Westinghouse Elec. Corp.*, 510 So. 2d 899, 902 (Fla. 1987) ("[A] manufacturer in a commercial relationship has no duty under either a negligence or strict products liability theory to prevent a product from injuring itself." (quoting *E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 871 (1986))).

Like the negligent manufacturing claim against Blue Bird, the strict liability claim against Blue Bird fails because the record contains no evidence of damages caused by the manufacturing, as opposed to repair, of the subject buses or, alternatively, because the damages of record are purely economic. *See supra* part X.D. Accordingly, summary judgment should be granted for Blue Bird on the strict liability claim in Count XII.

## Conclusion

Based on the foregoing and the current state of the record, the Motion for Summary Judgment by Defendants North American Bus Industries, Inc. and Blue Bird Corporation (Doc. No. 33) should be granted in part as follows:

1. in favor of Defendant North American Bus Industries, Inc. on Counts II, III, IV, and VI of the Complaint.

2. in favor of Defendant North American Bus Industries, Inc. on Count V of the Complaint to the extent Count V asserts a claim for negligent manufacturing of the subject buses.

3. in favor of Defendant Blue Bird Corporation on Count XII of the Complaint.

4. in favor of Defendant Blue Bird Corporation on Count XI of the Complaint to the extent Count XI asserts a claim for negligent manufacturing of the subject buses.

5.      in favor of Defendants Blue Bird Corporation and North American Bus Industries, Inc. to the extent American Coach asserts claims for breach of "freestanding, oral, enforceable contract agreements to provide service, support, and replacement parts" or for promissory estoppel.

However, because both sides to this litigation have failed to provide the Court with certain documents necessary to a decision and have failed to provide evidence and argument on issues crucial to the determination of the Motion, the Court will defer ruling on the Motion for Summary Judgment and requests that the parties address the issues raised in this Order and provide further evidentiary support, if appropriate, for their respective positions as follows.

1.  Blue Bird and NABI shall file a supplemental memorandum of law with evidentiary support in support of the Motion for Summary Judgment within thirty-five (35) days from the date of this Order.

2. American Coach shall file a supplemental response with evidentiary support within thirty-five (35) days after Blue Bird and NABI serve their supplemental memorandum of law.

3. Blue Bird and NABI may file a supplemental reply within fifteen (15) days after American Coach files its supplemental response.  The parties' respective memoranda shall address in particular the following issues:

a.      Whether a choice of law analysis is necessary for any claim remaining in this case, and if so, whether Florida or Georgia law applies;

b.      What are the terms of the Sales Contract and whether, and to what extent, Blue Bird and NABI are obligated under the Sales Contract to provide replacement parts for the subject buses;

c.     What are the terms of the express warranty for the subject buses issued by Blue Bird to American Coach and whether Blue Bird breached those terms; and

d.     What elements must Blue Bird prove to establish that the Limited Warranty governs the subject buses and whether the evidence of record presents a genuine issue of material fact requiring presentation to a jury on that issue.

The Court **GRANTS** American Coach's request for oral argument, which shall be set by separate notice. The Motion for Summary Judgment will be adjudicated after oral argument. In view of the analysis above, the Court suggests that the parties meet in good faith to limit the claims that remain viable in this case and direct their discovery, evidentiary support, and memoranda to such claims.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on October 8, 2010.

PATRICIA C. FAWSETT, JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record

-37-