**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**AMERICAN COACH LINES OF ORLANDO,**
**INC.,**

**Plaintiff,**

-vs-                                                    Case No.  6:09-cv-1999-Orl-19GJK

**NORTH AMERICAN BUS INDUSTRIES, INC.,**
**and BLUE BIRD CORPORATION,**

**Defendants.**

_____

**ORDER**

This case comes before the Court on the following:

1.  Motion for Summary Judgment by Defendants North American Bus Industries, Inc. and Blue Bird Corporation (Doc. No. 33, filed July 26, 2010);

2.  Notice of Filing of Affidavit of Ernest W. Lee in Support of Motion for Summary Judgment by Defendants North American Bus Industries, Inc. and Blue Bird Corporation (Doc. No. 34, filed July 26, 2010);

3.  Response in Opposition to Defendants' Motion for Summary Judgment and Request for Oral Argument by Plaintiff American Coach Lines of Orlando, Inc. (Doc. No. 41, filed Aug. 27, 2010);

4.  Notice of Filing of Affidavit of Brian M. Dickson in Support of Response in Opposition to Defendants' Motion for Summary Judgment by Plaintiff American Coach Lines of Orlando, Inc. (Doc. No. 42, filed Aug. 27, 2010);

5.      Notice of Filing of Affidavit of Michael W. Pierce in Support of Response in Opposition to Defendants' Motion for Summary Judgment by Plaintiff American Coach Lines of Orlando, Inc. (Doc. No. 43, filed Aug. 27, 2010);

6.      Reply to Response in Opposition to Motion for Summary Judgment by North American Bus Industries, Inc. and Blue Bird Corporation (Doc. No. 46, filed Sept. 22, 2010);

7.      Order Deferring Ruling on Motion for Summary Judgment and Granting Request for Oral Argument (Doc. No. 47, filed Oct. 8, 2010);

8.      Supplemental Memorandum of Law in Support of Motion for Summary Judgment by Defendants North American Bus Industries, Inc. and Blue Bird Corporation (Doc. No. 50, filed Nov. 12, 2010);

9.      Notice of Filing of Deposition Transcript of Brian Dickson in Support of Motion for Summary Judgment by Defendants North American Bus Industries, Inc. and Blue Bird Corporation (Doc. No. 54, filed Nov. 29, 2010);

10.     Amended Supplemental Memorandum of Law in Support of Motion for Summary Judgment by Defendants North American Bus Industries, Inc. and Blue Bird Corporation (Doc. No. 56, filed Dec. 2, 2010);

11.     Notice of Re-filing of Affidavit of Brian Dickson by Plaintiff American Coach Lines of Orlando, Inc. (Doc. No. 63, filed Jan. 5, 2011);

12.     Notice of Filing of Affidavit of Drew Hawkins by Plaintiff American Coach Lines of Orlando, Inc. (Doc. No. 65, filed Jan. 5, 2011);

13.     Notice of Filing of Affidavit of Michael Pierce by Plaintiff American Coach Lines of Orlando, Inc. (Doc. No. 66, filed Jan. 5, 2011);

14.     Notice of Filing of Affidavit of David Cahill by Plaintiff American Coach Lines of Orlando, Inc. (Doc. No. 67, filed Jan. 5, 2011);

15.     Notice of Filing of Affidavit of Brian Dickson dated January 5, 2011, by Plaintiff American Coach Lines of Orlando, Inc. (Doc. No. 68, filed Jan. 5, 2011);

16.     Supplemental Response in Opposition to Defendants' Motion for Summary Judgment by Plaintiff American Coach Lines of Orlando, Inc. (Doc. No. 69, filed Jan. 5, 2011);

17.     Notice of Filing of Compact Disk by Plaintiff American Coach Lines of Orlando, Inc. (Doc. No. 74, filed Jan. 14, 2011);

18.     Supplemental Reply in Support of Motion for Summary Judgment by Defendants North American Bus Industries, Inc. and Blue Bird Corporation (Doc. No. 75, filed Jan. 19, 2011);

19.     Notice of Filing of Compact Disk Pursuant to Court's Order of January 26, 2011, by Plaintiff American Coach Lines of Orlando, Inc. (Doc. No. 78, filed Jan. 31, 2011); and

20.     Affidavit of Jack Mears filed by Plaintiff American Coach Lines of Orlando, Inc. (Doc. No. 84, filed Feb. 9, 2011).

**Background**

**I.  Undisputed Facts**

This case concerns eleven "Xcel 102 - Model 4000" transit buses purchased in 2005 by Plaintiff American Coach Lines of Orlando, Inc. ("American Coach") from the manufacturer,

Defendant Blue Bird Corporation ("Blue Bird").  (Doc. No. 34-1 ¶¶ 4-5; Doc. No. 54-1 at 39, 49; Doc. No. 65-1 at 5.)  American Coach seeks to hold Blue Bird and Defendant North American Bus Industries, Inc. ("NABI") liable for damages incurred due to mechanical breakdowns of the subject buses and the inability to obtain replacement parts for the subject buses in a timely manner.  (Doc. No. 1, filed Nov. 24, 2009.)

Negotiations for the purchase of the subject buses occurred in 2005 between Drew Hawkins, who was then a sales representative for Blue Bird, and Kathleen Feder, who was then the President and General Manager of American Coach.  (Doc. No. 58-1 ¶¶ 3, 5; Doc. No. 65-1 ¶¶ 3-4; Doc. No. 69-13 at 10.)  On August 10, 2005, Feder signed a document listing several components of the subject buses and the sales price per bus, which was considered by Hawkins and Brian Dickson, the current Vice President and General Manager of American Coach, to be the sales agreement for the subject buses ("Sales Agreement").  (Doc. No. 65-1 ¶ 9; *id.* at 5-6; Doc. No. 68-1 ¶¶ 2-10.)

During his deposition as the corporate representative for American Coach, (Doc. No. 54-1 at 6-7), Dickson testified that Feder was the only person he knew who could say whether or not Blue Bird's limited warranty was provided to American Coach in connection with the sale or delivery of the subject buses.  (Doc. No. 54-3 at 14-15.)  Feder averred that "[a]s a person involved in the purchase of the [subject buses] by American Coach, [she] was aware that the purchase of the [subject buses] included Blue Bird's limited warranty as a part of the parties' agreement." (Doc. No. 59-1 ¶ 5.)  Feder further explained that American Coach purchased extended warranties on certain components of the subject buses because "the Blue Bird limited warranty which covered the [subject buses] was not sufficient for [American Coach's] purposes."  (*Id.* ¶ 4.)

Hawkins sent a fax to Glen Wilder on August 5, 2005, five days before Feder signed the Sales Agreement and three days before he met with Feder "to finalize the order," noting that he "wanted to get a head start on a couple of items," including "establish[ing] [the] warranty on 4 stock buses in writing to American Coach (Engine, Transmission, Blue Bird, and Carrier)." (Doc. No. 54-5 at 8.)   However, Hawkins averred that "to the best of his recollection, [he] did not have any conversation with Ms. Feder about limited warranties at the time she purchased these buses on behalf of American Coach and [he] probably did not do so." (Doc. No. 65-1 ¶ 5.)  At the same time, Hawkins considered that it was "Blue Bird's obligation to provide replacement parts as part of the agreement between Blue Bird and American Coach." (*Id.* ¶ 10.)

Ernest W. Lee, the Manager of Warranty Administration for Blue Bird, asserted that "[i]n connection with the sale and delivery of the [subject buses], Blue Bird issued its standard Limited Warranty" to American Coach.  (Doc. No. 34-1 ¶¶ 1, 8; *id.* at 16.)  According to Lee, "a copy of the Blue Bird Limited Warranty applicable to the sale of the [subject] buses" was attached to his affidavit ("Lee Warranty"). (*Id.* at 16.)  Lee further stated that "[a]s a matter of general practice, a copy of the [Lee] Warranty would have been delivered with each of the [b]uses." (*Id.* ¶ 8.)  Feder asserted that "[w]hen American Coach purchased buses, it had a process in place that included reviewing certain checklists with the bus delivery drivers to confirm receipt of certain items." (Doc. No. 59-1 ¶ 6.)  Feder also maintained that "[i]n connection with the delivery of the [subject buses], as a part of that process, American Coach did receive and review the Blue Bird limited warranty certificates." (*Id.*)  Hawkins averred that "[w]arranty documents for these buses would not have been sent to Ms. Feder before delivery." (Doc. No. 65-1 ¶ 6.)

All of the subject buses were delivered to American Coach by March 31, 2006.  (Doc. No. 34-1 ¶ 7; *id.* at 5-15; Doc. No. 68-4 at 2-11; Doc. No. 68-5 at 1-12.)  Within one year of purchase, American Coach discovered mechanical problems with the subject buses, and American Coach reported those problems to Blue Bird "as soon as they were discovered."  (Doc. No. 42 ¶ 5; Doc. No. 54-3 at 41.)  Blue Bird responded by referring American Coach to Defendant North American Bus Industries, Inc. ("NABI").  (Doc. No. 42 ¶ 7.)

According to Jack Kemp, the designated corporate representative of Blue Bird and NABI, Blue Bird and NABI were purchased by Cerberus Capital Partners at some point after the subject buses were delivered.  (Doc. No. 69-13 at 7, 13.)  Thereafter, the commercial bus operations of both Blue Bird and NABI were consolidated at NABI, and the school bus operations of both entities were consolidated at Blue Bird.  (*Id.*)  However, Blue Bird and NABI remained separate companies.[1]  (*Id.* at 35.)

Ernest Lee averred that American Coach submitted 26 warranty claims to Blue Bird for the subject buses between March 2006 and December 2007.  (Doc. No. 50-2 ¶¶ 1, 6; *id.* at 4.)  Only three claims were rejected, and 22 claims were paid in full.  (*Id.* at 4.)  Lee further asserted that

_____

[1] To the extent American Coach argues that NABI assumed any of Blue Bird's obligations for the subject buses pursuant to the reorganization of Blue Bird and NABI, American Coach has failed to produce evidence of such an assumption.  American Coach has not produced any documents pertaining to the reorganization of Blue Bird and NABI showing that NABI assumed any warranty obligations of Blue Bird for the subject buses.  The only evidence of record referencing the reorganization of Blue Bird and NABI is the aforementioned testimony of Jack Kemp and the letter from NABI to American Coach dated October 5, 2007, notifying American Coach that the model of the subject buses was being discontinued and suggesting that the reorganization of Blue Bird and NABI occurred sometime prior to the date of the letter.  (Doc. No. 68-6 at 2.)  Even assuming for the sake of argument that NABI accepted responsibility for Blue Bird's warranty obligations for the subject buses, a fact which has not been shown, American Coach has failed to sustain its claims for the reasons stated in this opinion.

American Coach submitted no warranty claims after December 2007. (*Id.* ¶ 6.) Dickson conceded during his deposition that American Coach submitted warranty claims to Blue Bird in the first two years after the purchase of the buses and that he did not know whether American Coach had submitted warranty claims after December 2007. (Doc. No. 54-2 at 17; Doc. No. 54-3 at 51; Doc. No. 63 ¶ 2.)

On October 5, 2007, Buddy Cox, the Director of Private Sector Sales for NABI, sent American Coach a letter stating as follows:

> As a result of recent product rationalization efforts, [NABI] has decided to discontinue the production of the Blue Bird brand, Model C4Re – Xcel 102 transit bus product line.
>
> The current contracts for your company will be produced and delivered as planned. Additionally, NABI will continue to provide warranty and technical support for the [model of the subject buses] in the field through its existing customer service organization. Replacement parts will continue to be provided through NABI's Aftermarket Parts organization . . . .

(Doc. No. 68-6 at 2.) According to Dickson, Cox was a point of contact for American Coach who assured American Coach that Blue Bird and NABI would resolve the buses' mechanical problems. (Doc. No. 42 ¶ 15.)

Dickson averred that "[o]n an ongoing basis," representatives of both Blue Bird and NABI told American Coach that they would resolve the mechanical problems with the buses. (*Id.* ¶ 8.) Dickson further asserted that Blue Bird and NABI failed to provide replacement parts and repairs in a timely fashion and that the replacement parts failed. (*Id.* ¶ 9.) In early 2008, Dickson met with James Bernacchi, Senior Vice President of NABI, to discuss the mechanical problems arising with the subject buses. (*Id.* ¶ 10.) According to Dickson, Bernacchi acknowledged that there were an unusual number of mechanical issues with the subject buses requiring repair and replacement parts

and that "he could – and would – resolve these issues." (*Id.*)  In addition to meeting with Bernacchi, Dickson discussed the buses' mechanical problems with other representatives of NABI and Blue Bird, including Jack Kemp, who identified himself as American Coach's service contact with NABI. (*Id.* ¶ 11.)  Kemp told Michael W. Pierce, the Vice President of Maintenance for American Coach, that he should talk to a representative of both Blue Bird and NABI to resolve the subject buses' mechanical issues and to obtain replacement parts.  (Doc. No. 43 ¶ 4.)

Sometime in 2008, Pierce met with representatives of Blue Bird and NABI in Dallas, Texas, and discussed the mechanical problems with the subject buses.  (Doc. No. 66-1 ¶ 3.)  Chuck Brookshire, an employee of Blue Bird, stated that Blue Bird would pull parts off buses being assembled if necessary to improve lead times for parts and that he would ask Kemp to "get personally involved in Orlando to resolve the problems."  (*Id.* ¶¶ 6-7.)  Pierce averred that Brookshire's statements led him to believe that Blue Bird and NABI were committing to fix the problems with the subject buses and that this commitment "was not limited to any particular time frame but rather to ongoing problems being experienced."  (*Id.* ¶ 9.)  On December 17, 2008, Dickson notified Blue Bird and NABI that "parts for a bus that [was] in an accident had a lead time of fourteen (14) weeks . . . ."  (Doc. No. 42 ¶ 12.)  Kemp stated in response that "he would help." (*Id.*)

On March 11, 2009, David Cahill, the Manger of Fleet and Facilities Maintenance for American Coach, (Doc. No. 67-1 ¶ 1), emailed Kemp to ask what warranty was provided on "these EXL 102," (Doc. No. 54-5 at 23), apparently referring to the subject buses.  (*See* Doc. No. 65-1 at 5 (providing on the Sales Agreement that the subject buses were "Xcel 102 - Model 4000").)  Kemp responded by listing the extended warranties for the subject buses and other buses and attaching a

"[p]ublished warranty statement" ("Kemp Warranty").  (Doc. No. 54-5 at 23-25.)  The Kemp Warranty is identical to the Blue Bird warranty certificate identified by Dickson to be a "Blue Bird warranty document [for] the same model" as the subject buses issued for a bus purchased by American Coach of Miami, Inc. at "around the same time" the subject buses were purchased.  (Doc. No. 63 ¶ 3; *id.* at 24.)

Although not identical, both the Lee and Kemp Warranties warranted "each bus or coach to be free from defects in material and workmanship under normal use and service for two (2) years/100,000 miles/160,000 kilometers, whichever occurs first from date of delivery to the original user."  (Doc. No. 34-1 at 16; Doc. No. 54-5 at 25.)  Both warranties stated in bold faced type using capital letters that "**THIS LIMITED WARRANTY IS EXPRESSLY IN LIEU OF ALL OTHER WARRANTIES EXPRESSED OR IMPLIED AND ALL OTHER OBLIGATIONS OR LIABILITIES** [and that] **BLUE BIRD MAKES NO WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.**"  (*Id.*)  In addition, both warranties contained a Georgia choice of law provision and provided that "[a]ny suit alleging a breach of this limited warranty or of any other alleged warranty must be filed within one year of breach."  (*Id.*)

On March 13, 2009, Dickson contacted NABI and Blue Bird about a bus that "had been out of service for several months" and for which parts had not been delivered by March 1, 2009 as promised.  (*Id.* ¶ 13.)  Dickson maintained that he was told by an unidentified source that NABI and Blue Bird "would resolve the problems."  (*Id.*)  Also on March 13, 2009, Cahill emailed Kemp, with copies to Pierce and Dickson, to reiterate that the long wait times for particular parts were unacceptable.  (Doc. No. 67-1 ¶ 7; *id.* at 69.)  Pierce replied to all recipients a few hours later

requesting that Blue Bird buy back the subject buses.  (*Id.* at 69.)  According to Dickson, NABI responded by "ask[ing] for part numbers and offer[ing] to help."  (Doc. No. 42 ¶ 14.)

On March 16, 2009, John Lewis, the Director of Aftermarket Sales for NABI, told Pierce that a parts operation employee was planning a trip to the area and would be calling to set up an appointment.  (Doc. No. 43 ¶ 8.)  During this conversation, Lewis asked Pierce for the most critical parts needed by American Coach to get the buses back in service.  (*Id.*)

According to Dickson and Cahill, at no time did any representative of Blue Bird or NABI state that a limited warranty prohibited or restricted them from resolving the mechanical issues with the subject buses or providing replacement parts.  (Doc. No. 63 ¶ 16; Doc. No. 67-1 ¶ 11.)  Cahill attached to his affidavit over 70 pages of emails documenting several requests for replacement parts by American Coach to Blue Bird and NABI between September 29, 2008 and October 12, 2010.  (Doc. No. 67-1 at 6-78.)

Kemp testified that Blue Bird and NABI provided customer service to American Coach after the Blue Bird limited warranty expired by assisting American Coach in purchasing replacement parts and working with American Coach to try to resolve the mechanical issues with the subject buses.  (Doc. No. 69-13 at 24, 33, 36.)  However, Kemp maintained that in taking these actions, Blue Bird and NABI did not provide warranty benefits beyond the original warranty term.  (*Id.* at 36.)

Dickson maintained that down times for the subject buses ranged from days to months, lead times on delivery of parts were often weeks at a time, and the buses were out of service on average over 50% of the time.  (Doc. No. 42 ¶¶ 6, 12.)  In addition, Dickson and Pierce asserted that NABI and Blue Bird failed to provide replacement parts either completely or within a reasonable time frame.  (*Id.* ¶ 20; Doc. No. 43 ¶ 15.)  Dickson and Pierce also contended that American Coach

"sustained economic losses directly attributable to the failure and/or refusal of Blue Bird and NABI to provide replacement parts in a timely fashion."  (Doc. No. 42 ¶ 21; Doc. No. 43 ¶ 16.)

American Coach has submitted the affidavit of Jack Mears, the President of Jack Mears & Associates, to provide expert testimony on fleet transportation operations.  (Doc. No. 84 ¶¶ 1-2, 4.) Mears holds a Bachelor of Science in Industrial Engineering and an M.B.A. from the University of Miami and possesses forty years experience in the trucking and transportation business.  (*Id.* ¶¶ 3, 5.)  Mears asserted that he is knowledgeable and experienced in equipment engineering, specifications, maintenance, equipment forecasting, purchase of lease equipment, scheduling, and control of maintenance operations.  (*Id.* ¶ 6.)  Mears averred that in his experience, an expected out-of-service ratio of 10% is commercially reasonable and that the 33-50% out of service rate claimed by American Coach is not acceptable within the industry.  (*Id.* ¶ 9.)  Mears further stated that in his experience, he "would expect a purchaser of vehicles like the [subject buses] to expect that the manufacturer is obligated to provide replacement parts whether that is part of a written agreement or not."  (*Id.* ¶ 11.)  Mears also opined that "[i]t is common in the industry for manufacturers to extend written warranties through a course of dealings" without documenting the extension in writing.  (*Id.* ¶ 14.)

## II. Parties' Contentions

On November 24, 2009, American Coach filed a twelve-count complaint against Blue Bird and NABI, alleging: (1) breach of contract against NABI; (2) breach of implied warranty of merchantability against NABI; (3) breach of implied warranty of fitness for a particular purpose against NABI; (4) breach of express warranty against NABI; (5) negligence against NABI; (6) strict liability against NABI; (7) breach of contract against Blue Bird; (8) breach of implied warranty of

merchantability against Blue Bird; (9) breach of implied warranty of fitness for a particular purpose against Blue Bird; (10) breach of express warranty against Blue Bird; (11) negligence against Blue Bird; and (12) strict liability against Blue Bird.  (Doc. No. 1.)

On July 26, 2010, Blue Bird & NABI moved for summary judgment on all twelve counts. (Doc. No. 33.)  American Coach responded in opposition, requesting oral argument and deferral of the Motion until further discovery was taken.  (Doc. No. 41.)  On October 8, 2010, the Court entered an Order deferring ruling on the Motion, granting Plaintiff's request for oral argument, and directing the parties to file supplemental memoranda of law with evidentiary support on specific issues.  (Doc. No. 47.)

Defendants filed a supplemental memorandum of law and an amended supplemental memorandum of law.[2] (Doc. Nos. 50, 56.)  Plaintiff thereafter filed a supplemental memorandum of law, (Doc. No. 69), and Defendants filed a reply brief.  (Doc. No. 75.)  On February 9, 2011, the Court heard oral argument on the Motion.

## Standard of Review

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259 (11th Cir. 2004).  An issue of fact is "material" under the applicable substantive law if it might affect the outcome of the case.  *Hickson Corp.*, 357 F.3d at 1259.  An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact

---

[2] The amended supplemental memorandum of law merely updated the page citations in the initial supplemental memorandum.

to find for the nonmoving party. *Id.* at 1260.  The court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.*; *Anderson*, 477 U.S. at 251-52.

The party moving for summary judgment has the burden of proving that: (1) there is no genuine issue as to any material fact, and (2) it is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  In determining whether the moving party has satisfied its burden, the court considers all inferences drawn from the underlying facts in the light most favorable to the party opposing the motion and resolves all reasonable doubts against the moving party.  *Anderson*, 477 U.S. at 255.  The court may not weigh conflicting evidence or weigh the credibility of the parties.  *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 919 (11th Cir. 1993). If a reasonable fact finder could draw more than one inference from the facts and that inference creates an issue of material fact, the court must not grant summary judgment.  *Id.*  On the other hand, summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial."  *Celotex Corp.*, 477 U.S. at 322.  In addition, when a claimant fails to produce "anything more than a repetition of his conclusory allegations," summary judgment for the movant is "not only proper but required."  *Morris v. Ross*, 663 F.2d 1032, 1034 (11th Cir. 1981).

**Analysis**

## I.  Governing Law

The Court initially addresses the parties' dispute concerning whether Florida or Georgia law applies in this case.  (Doc. No. 33 at 6-8; Doc. No. 41 at 7-8; Doc. No. 56 at 3.)  Except for the choice of law issue subsumed in the dispute over whether Blue Bird's limited warranty containing

a Georgia choice of law provision applies to the subject buses, discussed *infra* part V, the Court need not undertake a choice of law analysis here because the applicable Florida and Georgia laws are substantially similar. *See Fioretti v. Mass. Gen. Life Ins. Co.*, 53 F.3d 1228, 1234 (11th Cir. 1995) ("[W]hen the laws of the competing states are substantially similar, the court should avoid the conflicts question and simply decide the issue under the law of each of the interested states."). Accordingly, the Court will proceed to the merits of the individual claims.

## II.  Count I: Breach of Sales Contract by NABI

In Count I of the Complaint, American Coach alleges that NABI breached the sales contract for the subject buses. (Doc. No. 1 ¶¶ 23-40; 91-107.) NABI contends that it is entitled to summary judgment on this claim because NABI did not manufacture or sell the subject buses and because NABI was not in privity of contract with American Coach under any sales contract. (Doc. No. 33 at 8.)

Only parties to a contract can be liable for breach of contract. *See, e.g.*, *O'Connell v. Cora Bett Thomas Realty, Inc.*, 563 S.E.2d 167, 170 (Ga. Ct. App. 2002) (finding that an entity not a party to a contract could not be liable for its breach); *Preve v. Albert*, 578 So. 2d 33, 34 (Fla. 4th DCA 1991) (reversing a breach of contract finding because the appellant did not sign the contract and thus was not a party to the contract); *In re Donner's Estate*, 364 So. 2d 742, 749 (Fla. 3d DCA 1978) ("[A] contract cannot bind one who is not a party thereto . . . ." (citing *Strong & Trowbridge Co. v. H. Baars & Co.*, 54 So. 92, 93 (Fla. 1910)). The only executed agreement for the subject buses is the Sales Agreement consisting of a list of bus components and the sales price per bus signed by Feder. (Doc. No. 65-1 at 5-6.) NABI is not mentioned in, let alone obligated by, the Sales Agreement. (*Id.*)

Further, the testimony of record makes clear that Blue Bird, not NABI, manufactured, sold, and delivered the subject buses to American Coach.  Ernest Lee averred that Blue Bird sold the subject buses to American Coach, that Blue Bird, not NABI, manufactured the buses, that "NABI was not involved in the sale of the buses," and that Blue Bird delivered the buses to American Coach.  (Doc. No. 34-1 ¶¶ 4-7.)  Dickson testified that the subject buses were purchased directly from Blue Bird and that NABI was "not a part of th[e] process when the buses were purchased." (Doc. No. 54-1 at 24, 49.)  Blue Bird did not refer American Coach to NABI until after delivery of the subject buses when American Coach discovered and reported mechanical problems to Blue Bird. (Doc. No. 42 ¶¶ 5, 7; Doc. No. 43 ¶ 3.)  Finding no evidence of record that NABI was involved in the sale of the subject buses or a party to a contract for the purchase of the subject buses, summary judgment should be granted for NABI on the breach of contract claim in Count I.

## III.  Count VII: Breach of Sales Contract by Blue Bird

In Count VII of the Complaint, American Coach claims that Blue Bird breached the sales contract for the subject buses by failing to provide replacement parts.  (Doc. No. 1 ¶ 103.)  The Sales Agreement contains no obligation to provide replacement parts, (Doc. No. 65-1 at 5-6), and there is no evidence of record of a modification to the Sales Agreement or any other sales contract obligating Blue Bird to provide replacement parts.  Dickson testified that the only promise he was made is "that after the buses were discontinued, [Blue Bird and NABI] would continue to support replacement parts for the buses" for an indefinitie period of time.  (Doc. No. 54-3 at 2.)  Absent any evidence of an obligation under a sales contract for Blue Bird to provide replacement parts, American Coach has not met its burden of production, *Celotex*, 477 U.S. at 322, and Blue Bird is entitled to summary judgment on the breach of contract claim in Count VII.  *See TechBios, Inc. v.*

*Champagne*, 688 S.E.2d 378, 381 (Ga. Ct. App. 2009) (noting that a claim for breach of contract requires proof of breach); *Abbott Labs., Inc. v. Gen. Elec. Capital*, 765 So. 2d 737, 740 (Fla. 5th DCA 2000) (same).

## IV.  Counts II - III: Breach of Implied Warranties by NABI

In Counts II and II, American Coach asserts claims for breach of the implied warranties of merchantability and fitness for a particular purpose against NABI arising out of the sale of the subject buses.  (Doc. No. 1 at 8-10.)  NABI argues that it should be granted summary judgment on these claims because NABI did not sell the subject buses to American Coach.  (Doc. No. 33 at 8.)

The implied warranties of merchantability and fitness for a particular purpose are warranties imposed by law on a seller of goods.  Fla. Stat. §§ 672.314-.315; O.C.G.A. §§ 11-2-314 to -315. Only a seller of goods in privity of contract with a buyer may be liable for breach of implied warranties.  *See, e.g.*, *McQuiston v. K-Mart Corp.*, 796 F.2d 1346, 1347-48 (11th Cir. 1986) (applying Florida law); *McQueen v. Minolta Bus. Solutions, Inc.*, 620 S.E.2d 391, 393 (Ga. Ct. App. 2005).  It is undisputed that Blue Bird, not NABI, manufactured, sold, and delivered the subject buses to American Coach.  *See supra* part II.  Accordingly, NABI is entitled to summary judgment on the breach of implied warranty claims in Counts II and III of the Complaint.

## V.  Counts VIII - IX: Breach of Implied Warranties by Blue Bird

Blue Bird asserts that American Coach's claims for breach of the implied warranties of merchantability and fitness for a particular purpose are barred by the disclaimer of implied warranties contained in the limited warranty certificates issued for the subject buses.  (Doc. No. 33 at 8-9; Doc. No. 56 at 7-12.)  American Coach maintains in opposition that it is unclear what warranty disclaimer, if any, governs the subject buses.  (Doc. No. 41 at 5-7; Doc. No. 69 at 11.)

Blue Bird has the burden of proving that it lawfully disclaimed the implied warranties of merchantability and fitness for a particular purpose. *E.g.*, *Chrysler Corp. v. Wilson Plumbing Co., Inc.*, 208 S.E.2d 321, 324-25 (Ga. App. 1974); *Rehurek v. Chrysler Credit Corp.*, 262 So. 2d 452, 454 (Fla. 2d DCA 1972).  As discussed below, Blue Bird has met that burden.  Blue Bird's limited warranty governs the subject buses because the evidence of record viewed in the light most favorable to American Coach shows that the warranty was known to American Coach at the time of purchase.  Alternatively, American Coach assented to Blue Bird's limited warranty through its post-sale conduct, and American Coach has not presented any evidence to raise a genuine issue of material fact on this issue.  Further, Blue Bird's limited warranty contains a valid Georgia choice of law provision and satisfies the Georgia statutory requirements for disclaiming implied warranties.

## A. Warranty Governing Subject Buses

Generally, a disclaimer of implied warranties must be part of the "sales bargain between the parties," and a disclaimer first provided to the purchaser subsequent to a sale is invalid.  *See McNamara Pontiac, Inc. v. Sanchez*, 388 So. 2d 620, 621 (Fla. 5th DCA 1980) ("To be effective, a disclaimer must be part of the sales bargain between the parties." (citations omitted)); *Knipp v. Weinbaum*, 351 So. 2d 1081, 1085 (Fla. 3d DCA 1977) ("[A] disclaimer, to be effective, must be a part of the basis of the bargain between the parties." (citations omitted); *Wilson Plumbing*, 208 S.E.2d at 324-25 (declining to enforce a manufacturer's limited warranty disclaiming implied warranties where the warranty was first provided to the buyer after he was contractually obligated to purchase).

The Sales Agreement does not mention any warranty disclaimer or limited warranty containing a warranty disclaimer, (Doc. No. 65-1 at 5-6), and thus that document fails to show that

a warranty disclaimer was "part of the basis of the bargain" for the subject buses.  *Cf. Family Boating & Marine Ctrs. of Fla., Inc. v. Bell*, 779 So. 2d 402, 403 (Fla. 2d DCA 2000) (holding that a purchaser could not recover for breach of implied warranties where the purchase contract expressly disclaimed implied warranties).  Although the record contains no written document indicating that a warranty disclaimer was part of the bargain for the subject buses, a disclaimer of implied warranties is nevertheless valid if the buyer knew of the disclaimer "at the time the sale was made, with proof of knowledge being either direct or indirect through evidence of trade custom or course of dealing."  *Pennington Grain & Seed, Inc. v. Tuten,* 422 So. 2d 948, 951 (Fla. 1st DCA 1982); *see also* Fla. Stat. § 672.316(3)(c) ("An implied warranty can also be excluded or modified by a course of dealing or course of performance or usage of trade."); O.C.G.A. § 11-2-316(3)(c) (same); *Knipp*, 351 So. 2d at 1084-85 ("The Uniform Commercial Code contemplates that a seller may disclaim warranties as long as the buyer reasonably understands this is being done.").  In addition, a disclaimer of implied warranties that is not part of an initial bargain binds a purchaser where the purchaser "expressly assent[s]" to a warranty containing the disclaimer "by unequivocal behavior, clearly indicating a willingness to be bound by the terms."  *Twin Disk, Inc. v. Big Bud Tractor, Inc.*, 772 F.2d 1329, 1334 (7th Cir. 1985); *see also Tuten*, 422 So. 2d at 951 (noting that a post-sale disclaimer is valid if the purchaser subsequently "assented to it" (citation omitted)).

As discussed below, the unrefuted evidence of record shows that Blue Bird's warranty disclaimer applies to the subject buses because American Coach knew at the time of purchase that the subject buses included Blue Bird's limited warranty containing the warranty disclaimer or, alternatively, because American Coach expressly assented to Blue Bird's limited warranty by its post-sale conduct.

### 1. Knowledge at Time of Purchase

In support of its assertion that American Coach was aware of the warranty disclaimer at the time of sale, Blue Bird relies on the affidavit of Kathleen Feder, the President and General Manager of American Coach who was involved in the purchase of the subject buses.  (Doc. No. 75 at 5; Doc. No. 58-1 ¶¶ 1, 3.)  Feder averred that "[a]s a person involved in the purchase of the [subject buses] by American Coach, [she] was aware that the purchase of the [buses] included Blue Bird's limited warranty as part of the parties' agreement."  (Doc. No. 58-1 ¶ 5.)  Feder explained that she purchased extended warranties for certain components of the subject buses because the "Blue Bird limited warranty which covered the [subject buses] was not sufficient for [American Coach's] purposes."  (*Id.* ¶ 4.)  Consistent with Feder's testimony, the Sales Agreement reflects the purchase of several extended warranties by American Coach.  (Doc. No. 65-1 at 6.)

Feder did not specify in her affidavit the terms of "Blue Bird's limited warranty" that she considered part of the purchase of the subject buses, and there is conflicting evidence of record about which Blue Bird limited warranty of record governed the subject buses.  Ernest Lee identified the Lee Warranty as being issued "in connection with the sale and delivery of the [subject buses]." (Doc. No. 34-1 ¶ 8.)  However, when requested to admit that the Lee Warranty applied to the subject buses, American Coach denied the admission on the ground that it was unable to locate the Lee Warranty in its records in May or June of 2010.  (Doc. No. 41-1 ¶ 1.)  Jack Kemp provided Cahill a copy of the Kemp Warranty in March 2009 when Cahill asked what warranty governed the subject buses.  (Doc. No. 54-5 at 23-25.)  Further, "[a]t some point before this lawsuit was filed," Brian Dickson obtained a Blue Bird limited warranty certificate identical to the Kemp Warranty that was issued to American Coach Lines of Miami, Inc. for a bus of the same model and purchased "at

around the same time" as the subject buses.  (Doc. No. 63 ¶ 3; *id.* at 24.)  Although the foregoing evidence presents a genuine dispute over whether the Lee or Kemp Warranty governs the subject buses, that dispute is not material to this case because the provisions of both Warranties relevant to the issues raised by the parties are indistinguishable.

The Kemp Warranty has a revision date of "05/2005," whereas the Lee Warranty has a revision date of "06/2003," and the Lee Warranty is issued by "Blue Bird Body Company," whereas the Kemp Warranty is issued by "Blue Bird Coachworks," the same entity listed in the Sales Agreement.[3]  (*Compare* Doc. No. 34-1 at 16, *with* Doc. No. 54-5 at 25, and Doc. No. 65-1 at 5.)  Notwithstanding these differences, the Lee and Kemp Warranties reflect the same policy number, "2CCN," and the same effective date, "09/2001."  (*Compare* Doc. No. 34-1 at 16, *with* Doc. No. 54-5 at 25.)  Both Warranties expressly state that they are a limited warranty for "Xcel," which is the model of the subject buses.  (*Id.*)  Both Warranties contain the same Georgia choice of law provision and period of limitation, "two (2) years/100,000 miles/160,000 kilometers, whichever occurs first from date of delivery to the original user."  (*Id.*)  In addition, the warranty disclaimers and remaining provisions of the Lee and Kemp Warranties are virtually identical.  (*Id.*)  Finding no evidence of record plausibly suggesting that "Blue Bird's limited warranty" contemplated by Feder is materially different than the Lee or Kemp Warranties, any dispute about whether the Lee or Kemp Warranty governs the subject buses is not material.

---

[3] According to Paul Yousif, the Treasurer of Blue Bird Body Company, Blue Bird Corporation is the parent corporation of Blue Bird Body Company, the entity that builds and sells Blue Bird buses. (Doc. No. 80-1 ¶¶ 1-2.)  Yousif further averred that Blue Bird Coachworks was a name previously used by Blue Bird Body Company to identify the division of Blue Bird Body Company that sold commercial buses and motor homes. (*Id.* ¶ 3.)

In support of its argument that the Blue Bird limited warranty does not apply to the subject buses, American Coach submits the affidavit of Drew Hawkins, the Blue Bird sales representative who negotiated with Feder for the sale of the subject buses.  (Doc. No. 65-1 ¶¶ 3-4.)  Hawkins averred that "to the best of his recollection, [he] did not have any conversation with Ms. Feder about limited warranties at the time she purchased these buses on behalf of American Coach and [he] probably did not do so."  (*Id.* ¶ 5.)  This averment, without more, does not reasonably dispute Feder's knowledge that the Blue Bird limited warranty applied to the subject buses, as there is no evidence of record that Feder's knowledge of the Blue Bird limited warranty stemmed from conversations with Hawkins.  Hawkins also stated that "[w]arranty documents for these buses *would not have been* sent to Ms. Feder before delivery."  (*Id.* ¶ 6 (emphasis added).)  This speculative statement is not evidence that Feder did not receive or view Blue Bird's limited warranty prior to purchasing the subject buses.  Thus, Hawkins' averments do not create a genuine issue pertaining to Feder's knowledge of Blue Bird's limited warranty at the time the subject buses were purchased.

Feder's testimony about her knowledge of the Blue Bird limited warranty at the time of purchase, in the absence of any evidence creating a material dispute about the terms of that warranty, demonstrates that American Coach knew at the time of purchase that the Blue Bird limited warranty and the warranty disclaimer contained therein applied to the subject buses.  *See Tuten*, 422 So. 2d at 951 (noting that a disclaimer is valid even though it did not form part of the basis of the bargain if the buyer knew of the disclaimer at the time the sale was made).  Where, as here, "resolution of [an] issue requires a determination of state of mind, [m]uch depends on the credibility of the witnesses testifying as to their own states of mind." *Croley v. Matson Navigation Co.*, 434 F.2d 73, 77 (5th Cir. 1970).  However, American Coach has produced no evidence reasonably challenging

Feder's credibility or the veracity of her assertion that she knew at the time of purchase that the Blue Bird's limited warranty would cover the subject buses. Accordingly, based on the unchallenged testimony of Feder, it cannot reasonably be disputed that Blue Bird's limited warranty applies to the subject buses. *See* 10B Fed. Prac. & Proc. Civ. § 2730 (3d ed. 2010) ("[T]he fact that an affiant's statements would be best tested by a jury, in and of itself, will not preclude [awarding summary judgment] unless the evidence presented casts sufficient doubt on the affiant's credibility to create a genuine issue of material fact.") (citing *Dyer v. MacDougall*, 201 F.2d 265, 269 (2d Cir. 1953)).

### 2. Express Assent to Limited Warranty

Blue Bird contends that even if American Coach lacked actual knowledge of Blue Bird's limited warranty disclaimer at the time of purchase, the limited warranty applies to the subject buses because American Coach assented to the warranty by its post-sale conduct. (Doc. No. 56 at 10-12.) The Court agrees.

The evidence of record presents no genuine dispute concerning whether American Coach received and reviewed Blue Bird's limited warranty certificates upon delivery of the subject buses. According to Kathleen Feder, "when American Coach purchased buses, it had a process in place that included reviewing certain checklists with the bus delivery drivers to confirm receipt of certain items." (Doc. No. 58-1 ¶ 6.) Feder further averred that "[i]n connection with the delivery of the [subject buses], as a part of that process, American Coach did receive and review the Blue Bird limited warranty certificates." (*Id.*) Consistent with the testimony of Feder, Ernest Lee testified that "[i]n connection with the sale and delivery of the [subject buses], Blue Bird issued its "standard Limited Warranty." (Doc. No. 34-1 ¶ 8.) Lee further testified that "[a]s a matter of general practice, a copy of the Limited Warranty would have been delivered with each of the [subject buses]." (*Id.*)

Similarly, Drew Hawkins testified that "[w]arranty documents would generally have [been] sent to American Coach with the bus[es] at the time of delivery . . . ."  (Doc. No. 65-1 ¶ 6.)

Feder's testimony that American Coach received the Blue Bird limited warranty certificates when the buses were delivered is not refuted by American Coach's inability to locate the Lee Warranty in its records in May or June 2010.  (Doc. No. 41-1 ¶ 1.)  In addition, American Coach's receipt of the Blue Bird limited warranty certificates at the time of delivery is not inconsistent with Cahill's request to Kemp for the warranties governing the subject buses in March 2009.  (Doc. No. 54-5 at 23.)

Additionally, to the extent American Coach argues that Feder's testimony is genuinely disputed by the bills of lading for the subject buses, that argument is without merit.  (Doc. No. 69 at 6-7.)  As noted by American Coach, the "pickup inspection" section of some bills of lading was not fully completed.  (Doc. Nos. 68-4, 68-5.)  However, the bills of lading do not address delivery of warranty documents, and no bill of lading noted in the comment section that a warranty was missing.  (*Id.*)  Further, there is no evidence of record indicating that the bills of lading for the subject buses were the "checklists" referenced by Feder in her affidavit that American Coach completed upon delivery of buses to confirm receipt of certain items.  (Doc. No. 58-1 ¶ 6.)  Accordingly, the bills of lading do not reasonably call into question Feder's assertion that the Blue Bird limited warranty certificates for the subject buses were received and reviewed by American Coach when the buses were delivered.  (*Id.*)

American Coach's post-delivery conduct is consistent with its receipt of Blue Bird's limited warranty at the time of delivery.  According to Lee, 26 warranty claims were submitted to Blue Bird for the subject buses between March 2006 and December 2007.  (Doc. No. 50-2 ¶ 6; *id.* at 4.)  Only

three claims were rejected, and 22 claims were paid in full. (*Id.* at 4.) Further, Blue Bird paid in full all but one of the 13 warranty claims related to the subject buses submitted directly by American Coach to Blue Bird. (*Id.*) Lee further asserted that American Coach submitted no warranty claims after December 2007. (*Id.* ¶ 6.) Brian Dickson, the General Manager of American Coach, conceded during his deposition that American Coach submitted warranty claims to Blue Bird in the first two years after the purchase of the buses and that he had no information indicating that American Coach had submitted warranty claims after December 2007. (Doc. No. 54-2 at 17; Doc. No. 54-3 at 51.) Dickson also acknowledged that a Blue Bird "Warranty Adjustment Application" completed by American Coach was faxed to Blue Bird on March 26 of an unknown year. (Doc. No. 54-3 at 23-24; Doc. No. 54-5 at 28.) According to Kemp, the warranty adjustment form was remitted by customers to request credit for work covered by a Blue Bird warranty. (Doc. No. 69-13 at 19.) Blue Bird's warranty records indicate that the repairs documented on the Warranty Adjustment Application of record submitted by American Coach were paid in full. (*Compare* Doc. No. 54-5 at 28, *with* Doc. No. 50-2 at 4.)

By receiving and reviewing the Blue Bird limited warranty certificates upon delivery of the buses, submitting at least one warranty adjustment form to Blue Bird, directly making at least 13 warranty claims to Blue Bird for the subject buses, and receiving credit from Blue Bird on 23 warranty claims between March 2006 and December 2007, American Coach expressly assented to the terms of Blue Bird's limited warranty. *See Twin Disk*, 772 F.2d at 1334-35 (finding that a purchaser "expressly assented" to a post-sale warranty containing a disclaimer by knowing the warranty terms, making inquiries regarding the warranty, assigning the warranty to its customers by telling them to contact the seller directly about repairs, and processing over 210 claims under the

warranty); *Monsanto Agr. Prods. Co. v. Edenfield*, 426 So. 2d 574, 577-78 (Fla. 1st DCA 1982) (finding that purchaser assented to post-sale disclaimer printed on seed package by using seeds after reading directions for use which contained disclaimer and an express invitation to return the product if the terms of warranty were unacceptable).  Having availed itself of benefits under Blue Bird's limited warranty, American Coach "by unequivocal behavior, clearly indicat[ed] a willingness to be bound" by its terms and thus is barred from denying the disclaimer of implied warranties contained therein.  *E.g.*, *Twin Disk*, 772 F.2d at 1335.

In summary, Blue Bird's limited warranty applies to the subject buses because the unrefuted evidence of record shows that American Coach knew at the time of purchase of the subject buses that Blue Bird's limited warranty applied.  Alternatively, American Coach is barred from denying the applicability of Blue Bird's limited warranty due to its post-sale knowledge of the warranty and availment of its terms.[4]  Having found that Blue Bird's limited warranty governs the subject buses,

---

[4] Blue Bird also argues that American Coach should be imputed knowledge that the Limited Warranty applied to the subject buses because it submitted a warranty claim to Blue Bird for another bus before purchasing the subject buses.  (Doc. No. 56 at 9.)  Submitting a claim on a product's warranty containing a disclaimer, without more, does not permit an inference that the purchaser knew a subsequent purchase of that product would be covered by the same disclaimer.  *See Bowdoin v. Showell Growers, Inc.*, 817 F.2d 1543, 1547 (11th Cir. 1987) (noting that a previous purchase accompanied by a disclaimer of warranty, by itself, does not permit an inference that the purchaser knew a subsequent purchase of the same product would be covered by the same disclaimer).  Further, a course of dealings demonstrating the regular application of a particular warranty disclaimer is not established by a single prior transaction or occurrence.  *Id.* at 1547 n.18; *see also* Fla. Stat. § 671.205(2) ("A 'course of dealing' is a sequence of conduct concerning previous transactions . . . ."); *Irvin Int'l Inc. v. Riverwood Int'l Corp.*, 683 S.E.2d 158, 161-62 (Ga. Ct. App. 2009) (noting that a single transaction seven years prior did not establish a course of dealing).  Accordingly, the fact that American Coach submitted a warranty claim to Blue Bird prior to purchasing the subject buses, by itself, does not permit an inference that American Coach knew at the time of purchase that the Blue Bird warranty disclaimer would apply to the subject buses.

the Court turns to whether the warranty lawfully disclaims the implied warranties of merchantability and fitness for a particular purpose.

### B.  Validity of Disclaimer Contained in Limited Warranty

Blue Bird's limited warranty governing the subject buses contains a choice of law provision specifying that "[a]ll rights under this limited warranty shall be governed by the law of Georgia, U.S.A."  (Doc. No. 34-1 at 16.)  This choice of law provision does not contravene public policy, as Blue Bird manufactured the subject buses and is a Georgia corporation with its principal place of business in Georgia.  (Doc. No. 1 ¶¶ 3, 9; Doc. No. 14 ¶¶ 3, 9; Doc. No. 34-1 ¶ 5); *see* Fla. Stat. § 671.105(1) ("[W]hen a transaction bears a reasonable relation to this state and also to another state or nation the parties may agree that the law either of this state or of such other state or nation shall govern their rights and duties."); *Burroughs Corp. v. Suntogs of Miami, Inc.*, 472 So. 2d 1166, 1167-68 (Fla. 1985) (upholding a sales contract provision applying a Michigan statute of limitations because it bore a reasonable relationship to Michigan, as the seller was a Michigan corporation with its principal place of business in Michigan).  Therefore, Georgia law governs Blue Bird's limited warranty.

A disclaimer of the implied warranties of merchantability and fitness for a particular purpose is permitted by Georgia law under the following circumstances:

> [T]o exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous.  Language to exclude all implied warranties of fitness is sufficient if it states, for example, that "There are no warranties which extend beyond the description on the face hereof."

O.C.G.A. § 11-2-316(2).  The term "conspicuous" is defined by statute as follows:

"Conspicuous," with reference to a term, means so written, displayed, or presented that a reasonable person against which it is to operate ought to have noticed it. Whether a term is conspicuous or not is a decision for the court. Conspicuous terms include the following:

(A) A heading in capitals equal to or greater in size than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same or lesser size; and

(B) Language in the body of a record or display in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks that call attention to the language.

*Id.* § 11-1-201(10).

In contrast to the other four paragraphs of Blue Bird's limited warranty which appear in plain, unformatted type, the third paragraph of the limited warranty is printed as follows:

**THIS LIMITED WARRANTY IS EXPRESSLY IN LIEU OF ALL OTHER WARRANTIES EXPRESSED OR IMPLIED AND ALL OTHER OBLIGATIONS OR LIABILITIES. . . . BLUE BIRD MAKES NO WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. . . .**

(Doc. No. 34-1 at 16; Doc. No. 54-5 at 25.)  This bold, capitalized language is "conspicuous" under O.C.G.A. § 11-1-201(10)(B) and constitutes a valid disclaimer of the implied warranties of merchantability and fitness for a particular purpose under O.C.G.A. § 11-2-316(2).  *See Steele v. Gold Kist, Inc.*, 368 S.E.2d 196, 197 (Ga. Ct. App. 1988) (finding that a written disclaimer stating in capital letters that retailer had made no warranties, express or implied, including merchantability or fitness for particular purpose, except as expressly stated, precluded consumer's action against retailer for breach of implied warranties).

Having found that Blue Bird's limited warranty governs the subject buses and lawfully disclaims the implied warranties of merchantability and fitness for a particular purpose, Blue Bird

is entitled to summary judgment on American Coach's claims for breach of the implied warranties of merchantability and fitness for a particular purpose in Counts VIII and IX.

## VI.  Count IV: Breach of Express Warranty by NABI

In Count IV of the Complaint, American Coach contends that NABI breached oral and written express warranties that the subject buses would be free from defects in material and workmanship for two years or 100,000 miles, whichever occurs first, and that the subject buses would be suitable for the purpose for which they were purchased.  (Doc. No. 1 at 11-12.)  NABI argues that it should be granted summary judgment on this claim because NABI lacked contractual privity with American Coach.  (Doc. No. 33 at 8.)

As the party asserting a claim for breach of express warranty, American Coach bears the burden of proving, *inter alia*, the existence of an express warranty and breach of that warranty.  *See State Farm Ins. Co. v. Nu Prime Roll-A-Way of Miami*, 557 So. 2d 107, 108 (Fla. 3d DCA 1990) ("The burden of proof is on the plaintiff to show facts giving rise to a warranty . . . ." (citing *Boehm v. Fox*, 473 F.2d 445, 449 (10th Cir. 1973))); *Fender v. Colonial Stores, Inc.*, 225 S.E.2d 691, 693 (Ga. Ct. App. 1976) ("An action based on breach of warranty necessitates a showing of the existence of the warranty, the fact that the warranty was broken and that the breach of the warranty was the proximate cause of the loss sustained." (citation omitted)).  Consequently, American Coach must produce evidence creating a genuine issue of material fact regarding the existence of an express warranty and breach of that warranty to withstand Defendants' motion for summary judgment. *Celotex*, 477 U.S. at 322.

Blue Bird's limited warranty does not mention, let alone obligate, NABI.  (Doc. No. 34-1 at 16; Doc. No. 54-5 at 25.)  Therefore, NABI cannot be liable to American Coach for breach of that

warranty.  *See supra* part II (noting that only parties to a contract can be liable for its breach).

Notwithstanding, American Coach maintains that NABI expressly warranted the subject buses to

American Coach through its statements concerning repairs and delivery of replacement parts.  (Doc.

No. 41 at 8-12.)  The Court disagrees.  As discussed below, NABI is not liable to American Coach

for breach of express warranty because NABI's statements to American Coach concerning the

subject buses did not form part of the basis of the bargain for the subject buses or, alternatively,

because NABI and American Coach were not in contractual privity and no exception to the

contractual privity rule applies.

### A.  Statements as Basis of the Bargain

Pursuant to Fla. Stat. § 672.313, and O.C.G.A. § 11-2-313, an express warranty is created

by the following:

> (a) Any affirmation of fact or promise made by the seller to the buyer which relates
> to the goods and becomes part of the basis of the bargain creates an express warranty
> that the goods shall conform to the affirmation or promise.
>
> (b) Any description of the goods which is made part of the basis of the bargain
> creates an express warranty that the goods shall conform to the description.
>
> (c) Any sample or model which is made part of the basis of the bargain creates an
> express warranty that the whole of the goods shall conform to the sample or model.

In view of these provisions, an express warranty is created only by actions forming "part of the basis

of the bargain."  *Accord* U.C.C. § 2-313, cmt. 1 ("Express warranties rest on 'dickered' aspects of

the individual bargain . . . .").  The parties do not cite, and the Court does not find, any Florida or

Georgia law to the contrary.

The breach of express warranty claim against NABI fails because there is no evidence that

NABI made any statements, representations, or promises to American Coach forming "part of the

basis of the bargain" for the subject buses.  Brian Dickson averred that in January 2011, he located in American Coach's business records a document entitled "NABI Standard Warranty" bearing an effective date of October 27, 2006.  (Doc. No. 68-1 ¶ 16; Doc. No. 68-6 at 4-35.)  American Coach argues that the NABI Standard Warranty "might be considered" to be an express warranty governing the subject buses.  (Doc. No. 69 at 9-10.)  The Court disagrees.  The effective date of this warranty is October 27, 2006, (Doc. No. 68-6 at 5), over six months after the subject buses were delivered to American Coach and over one year after Feder executed the Sales Agreement.  (Doc. No. 34-1 ¶ 7; *id.* at 5-15; Doc. No. 54-1 at 40; Doc. No. 65-1 at 5-6.)  In view of the time gap between the effective date of the NABI Standard Warranty and the date of the Sales Agreement, and absent any evidence of record linking the NABI Standard Warranty to the sale of the subject buses, the NABI Standard Warranty did not plausibly form part of the basis of the bargain for the subject buses.

Further, because all statements of record by NABI to American Coach regarding the subject buses were made after the buses were delivered to American Coach, (Doc. No. 42 ¶¶ 8-16; Doc. No. 43 ¶¶ 4-11), NABI's statements to American Coach were not part of the "basis of the bargain" and thus did not create an express warranty under Florida or Georgia law.  Finding no evidence of record that NABI gave American Coach an express warranty forming part of the basis of the bargain for the subject buses, American Coach's claim for breach of express warranty against NABI must fail.

### B. Privity

As discussed *supra* part II, Blue Bird, not NABI, manufactured, sold, and delivered the subject buses to American Coach, and NABI was not in contractual privity with American Coach regarding the purchase and sale of the subject buses.  Contractual privity is generally required to establish breach of an express warranty under Florida and Georgia law.  *See, e.g.*, *Levine v. Wyeth*

*Inc.*, 684 F. Supp. 2d 1338, 1345 (M.D. Fla. 2010) (collecting Florida cases); *Weiss v. Johansen*, 898 So. 2d 1009, 1012 (Fla. 4th DCA 2005); *Ellis v. Rich's, Inc.*, 212 S.E.2d 373, 376 (Ga. 1975).  As discussed below, although both states' jurisprudence is clouded by exceptions to the contractual privity requirement, no exception under Georgia or Florida law applies here.

### 1.  Georgia Law

In *Stewart v. Gainesville Glass Co., Inc.*, 206 S.E.2d 857 (Ga. Ct. App. 1974), the Georgia Court of Appeals ruled that a consumer who purchased windows from a local dealer could not enforce the manufacturer's ten year warranty because the consumer had no privity with the manufacturer.  *Id.* at 860.  This decision was affirmed by the Georgia Supreme Court in a one-paragraph opinion holding that contractual privity was required to claim breach of an express warranty except as provided in O.C.G.A. § 11-2-318 and except where the warranty "clearly extends to some identifiable third person," meaning a third-party beneficiary.  *Stewart v. Gainesville Glass Co., Inc.*, 212 S.E.2d 377, 377 (Ga. 1975).

While no case has explicitly modified the general rule and two exceptions stated in *Stewart*, a line of Georgia cases appears to carve out a third exception to the privity requirement.  In *Jones v. Cranman's Sporting Goods*, 237 S.E.2d 402 (Ga. Ct. App. 1977), an express warranty included in the papers accompanying a defective rifle by the manufacturer/distributor[5] of the gun was enforced against the manufacturer/distributor, notwithstanding the fact that the plaintiff purchased the rifle from a sporting goods store, not the manufacturer/distributor.  This result was based on the

---

[5] The manufacturer, not the distributor, warranted the gun in *Jones*.  *Jones*, 237 S.E.2d at 405.  However, the court in *Jones* presumed on the motion for summary judgment that the manufacturer and distributor were alter egos and thus considered each of their actions attributable to the other.  *Id.*

extension of the following principle beyond the context of an automobile purchase: "[w]here an automobile manufacturer, through its authorized dealer issues to a purchaser of one of its automobiles from such dealer admittedly as a part of the sale a warranty by the manufacturer running to the purchaser, privity exists. . . ." *Jones*, 237 S.E.2d at 405 (quoting *Chrysler Corp. v. Wilson Plumbing, Co.*, 208 S.E.2d 321, 323 (Ga. Ct. App. 1974)).   Although the warranty card accompanying the rifle in *Jones* was included by the manufacturer/distributor, not an authorized dealer, in the papers that came with the gun, the court found the case to be analogous to *Wilson Plumbing*, reasoning that because "[t]he weapon here was 'fully guaranteed' by the distributor to the ultimate consumer, . . . it became part of the bargain of sale and thus privity existed." *Id.* at 406. To the extent *Jones* creates a third exception to the privity requirement for an express warranty under *Stewart*, such exception is limited to cases where the express warranty is "part of the bargain of sale." *Id.*; *cf. EMJ Corp. v. Laticrete Int'l, Inc.*, 934 F. Supp. 430, 433-34 (M.D. Ga. 1996) (noting that this result "seems to eliminate the privity requirement almost entirely, since a purchaser could easily characterize any warranty as a part of the 'bargain of sale' and thus establish privity with the manufacturer.").

The evidence of record does not satisfy any of the three exceptions to the requirement of contractual privity to establish breach of an express warranty under Georgia law.  First, the third-party privity provisions under O.C.G.A. § 11-2-318 do not apply here.  Pursuant to O.C.G.A. § 11-2-318, a seller's express or implied warranty extends to the buyer's family, household, and guests who foreseeably use, consume, or are affected by the purchased goods.  Because NABI did not sell the subject buses to American Coach, (Doc. No. 34-1 ¶ 6), this exception does not apply.

Second, American Coach is not a third-party beneficiary to any express warranty because there is no evidence that NABI promised Blue Bird or any other entity to act or perform for the benefit of American Coach. *See Stewart*, 206 S.E.2d at 753 ("A third-party beneficiary contract is one in which the promisor engages to the promisee to render some performance to a third person." (citation omitted)). Third, the *Jones* exception does not apply here because there is no evidence in the record that NABI's statements to American Coach formed "part of the bargain of sale" for the subject buses. *See supra* part VI.A (noting that there is no evidence of record that NABI made any statements, representations, or promises to American Coach as "part of the basis of the bargain" for the subject buses). Accordingly, there is no factual basis in the record for finding an exception to the contractual privity requirement under Georgia law.

### 2. Florida Law

In addition to the statutory third-party privity exception which does not apply here,[6] Florida law provides an exception to the privity requirement where a buyer relies on "direct contacts" with a manufacturer in purchasing a product. In *Cedars of Lebanon Hosp. Corp. v. European X-Ray Distribs. of Am., Inc.*, 444 So. 2d 1068 (Fla. 3d DCA 1984), the Florida Third District Court of Appeal found that privity existed between a manufacturer and a buyer, notwithstanding that the seller was a third-party distributor, where the manufacturer's representative made direct contact with the buyer and where the buyer relied on representations directly from the manufacturer's representative in purchasing the product from the distributor. *Id.* at 1072. The court emphasized

---

[6] Section 672.318, Florida Statutes, provides that a buyer's family, household, guests, employees, agents, and servants who foreseeably use, consume, or are affected by the purchased goods may hold a seller liable for an express or implied warranty despite the absence of privity. Like the third-party privity exception under Georgia law, the third-party privity exception under Florida law is inapplicable because NABI did not sell the subject buses. *See supra* part VI.B.1.

that had there been no "direct contacts" between the manufacturer and buyer, there would have been no viable claim for breach of an express warranty. *Id.* at 1072 n.4.  Similarly, in *ISK Biotech Corp. v. Douberly*, 640 So. 2d 85 (Fla. 1st DCA 1994), the Florida First District Court of Appeal sustained a claim for breach of express warranty against a manufacturer where the manufacturer informed the seller that it could assure buyers that the fungicide would not destroy watermelon crops and where the plaintiff purchased the fungicide relying on such advice from the seller.  *Id.* at 87-88.  These cases and others stand for the proposition that a manufacturer, although not the ultimate seller of the product, may expressly warrant a product through "direct contacts" with the buyer upon which the buyer relies in purchasing the product.  *See, e.g.*, *Smith v. Wm. Wrigley Jr. Co.*, 663 F. Supp. 2d 1336, 1341-42 (S.D. Fla. 2009) (finding a well-pled claim for breach of express warranty against a chewing gum company where the plaintiff alleged that the company advertised the gum as "scientifically proven to help kill the germs that cause bad breath," that there was no scientific proof to substantiate the advertisement, and that the plaintiff purchased gum in reliance on the advertisement); *cf. Spolski Gen. Contractor, Inc. v. Jett-Aire Corp. Aviation Mgmt. of Cent. Fla., Inc.*, 637 So. 2d 968, 970 (Fla. 5th DCA 1994) (holding that a manufacturer of floor paint was not liable to a general contractor for breach of express warranty where there was no sale from the manufacturer to the contractor, no privity between them, no contract between them, and no reliance by the contractor on any warranty from the manufacturer).

The instant case does not fit within the "direct contacts" exception to the privity requirement for two reasons.  First, Blue Bird, not NABI, manufactured and sold the subject buses.  (Doc. No. 34-1 ¶¶ 4-6.)  Second, as discussed *supra* part VI.A, there is no evidence in the record that American Coach relied on any statements or representations by NABI in purchasing the subject buses.  Rather,

Blue Bird referred American Coach to NABI after the subject buses were delivered to American Coach and mechanical problems were discovered. (Doc. No. 42 ¶¶ 5, 7.) Accordingly, no exception to the contractual privity requirement for a breach of express warranty claim under Florida law applies here.

In summary, NABI should be granted summary judgment on the breach of express warranty claim in Count IV due to the absence of any statements by NABI to American Coach forming part of the basis of the bargain for the subject buses or, alternatively, due to the lack of privity between NABI and American Coach or an exception to the privity requirement.

## VII.  Count X: Breach of Express Warranty by Blue Bird

The parties dispute whether the claim for breach of express warranty against Blue Bird is barred by the one-year limitations period set forth in the limited warranty governing the subject buses.  (Doc. No. 33 at 9-12; Doc. No. 41 at 13-14.)  Blue Bird's limited warranty provides that "[a]ny suit alleging a breach of this limited warranty or of any other alleged warranty must be filed within one year of breach."  (Doc. No. 34-1 at 16; Doc. No. 54-5 at 25.)  This case was filed on November 24, 2009.  (Doc. No. 1.)  Therefore, the instant claim for breach of express warranty against Blue Bird is barred unless a breach occurred on or after November 24, 2008.

"A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered." O.C.G.A. § 11-2-725(2).  Accordingly, "[w]hile a breach of warranty generally occurs upon delivery of the goods regardless of the time of discovery of the breach . . ., where there is an agreement to repair or replace, the warranty is not breached until there is a refusal or failure to

repair." *Space Leasing Assocs. v. Atl. Bldg. Sys., Inc.*, 241 S.E.2d 438, 441 (Ga. Ct. App. 1977).

In the case of a warranty to repair or replace goods, "[i]t is the refusal to remedy within a reasonable

time, or a lack of success in the attempts to remedy which would constitute a breach of warranty"

and cause the limitations period to accrue. *Id.* (quoting *Ford Motor Co. v. Gunn*, 181 S.E.2d 694,

696 (Ga. Ct. App. 1971)).

Blue Bird's limited warranty governing the subject buses is a warranty to repair or replace

goods, as it warrants:

> each bus or coach to be free from defects in material and workmanship under normal
> use and service for two (2) years/100,000 miles/160,000 kilometers, whichever
> occurs first from date of delivery to the original user.   Blue Bird warrants all
> components installed by Blue Bird except . . . .

> Blue Bird's obligation covered in this limited warranty is limited to the repair or
> replacement of such parts as shall, under normal use and service, appear to have been
> defective in workmanship or material.

(Doc. No. 34-1 at 16; Doc. No. 54-5 at 25.)   Because Blue Bird's limited warranty governing the

subject buses is a warranty to repair or replace, American Coach's claims for breach of express

warranty against Blue Bird did not accrue until Blue Bird refused to remedy defects covered by the

warranty within a reasonable time or failed in its attempts to remedy such defects. *Space Leasing*,

241 S.E.2d at 441.

Blue Bird's limited warranty was expressly limited to a term of two years, and no

representations of any person, including salespersons, dealers, distributors, or factory representatives

of Blue Bird, could extend the warranty term.  (Doc. No. 34-1 at 16; Doc. No. 54-5 at 25.)   Although

Jack Mears testified that it is common industry practice to extend warranties beyond the original

term pursuant to a course of dealings, (Doc. No. 84 ¶ 14), the express, two-year term of the Blue

Bird limited warranty prevails over any contrary course of dealings. *See* O.C.G.A. § 11-1-205(4)

("The express terms of an agreement and an applicable course of dealing . . . shall be construed wherever reasonable as consistent with each other; but when such construction is unreasonable [the] express terms control . . . ."). Thus, because all of the subject buses were delivered to Blue Bird by March 31, 2006, (Doc. No. 34-1 at 5-15), Blue Bird's limited warranty covered repairs and replacement parts for mechanical defects in the subject buses existing on or before March 31, 2008. (*Id.* at 16.)

The record contains several incidents after November 28, 2008, the accrual date for American Coach's claims under Blue Bird's limited warranty, in which representatives of Blue Bird[7] attempted to provide replacement parts for the subject buses. None of these incidents permit a reasonable fact finder to infer that the defects underlying those incidents existed on March 31, 2008, and thus were covered by Blue Bird's limited warranty. Because those defects were not covered by Blue Bird's limited warranty, any refusal or failure to repair those defects did not breach Blue Bird's limited warranty.

On December 17, 2008, Brian Dickson notified Blue Bird and NABI that "parts for a bus that [was] in an accident had a lead time of fourteen (14) weeks . . . ." (Doc. No. 42 ¶ 12.) Dickson maintained that "Jack Kemp, on behalf of Defendants, responded that he would help." (*Id.*) It is unclear whether Dickson first learned on or about December 17, 2008 that the lead time for the parts would be fourteen weeks or whether Dickson received the parts on December 17, 2008, fourteen

---

[7] As noted earlier at some point after the subject buses were delivered, the commercial bus operations of both Blue Bird and NABI were consolidated at NABI, and it appears that some Blue Bird personnel became NABI personnel serving in the same role. (Doc. No. 69-13 at 7, 13.) The parties do not squarely address whether the personnel who transferred from Blue Bird to NABI remained representatives of Blue Bird for purposes of Blue Bird's limited warranty. However, viewing the evidence of record in the light most favorable to American Coach, the Court proceeds by attributing all statements by Blue Bird and NABI personnel to Blue Bird on this claim.

weeks after the request.  Under either interpretation of Dickson's averments, a reasonable fact finder could not conclude absent any other evidence concerning the repairs discussed on December 17, 2008, that such repairs existed on March 31, 2008, and thus were covered by Blue Bird's limited warranty.

On March 13, 2009, Dickson contacted NABI and Blue Bird about one of the subject buses which "had been out of service for several months" and for which parts were promised by March 1, 2009 but had not been delivered.  According to Dickson, he "was again told that NABI and Blue Bird would resolve the problems."  (*Id.* ¶ 13.)  Although "[l]ead times on parts were often weeks at a time," (*id.* ¶ 12), the fact that the parts discussed on March 13, 2009 had been outstanding for "several months," without more, does not permit a reasonable inference that those parts pertained to a defect existing on March 31, 2008.

Also on March 13, 2009, Cahill emailed Kemp, with copies to Pierce and Dickson, to reiterate that the long wait times for particular parts on buses that had been down for three and two weeks, respectively, were unacceptable.  (Doc. No. 67-1 ¶ 7; *id.* at 69.)  Pierce replied to all recipients a few hours later requesting that Blue Bird buy back the subject buses.  (*Id.* at 69; Doc. No. 43 ¶ 7.)  According to Dickson, NABI responded by "ask[ing] for part numbers and offer[ing] to help."  (Doc. No. 42 ¶ 14.)  Based on the bus downtimes provided by Cahill, without more, the parts Cahill referenced could not have reasonably pertained to a defect existing on March 31, 2008.

On March 16, 2009, NABI notified Pierce that a parts operation representative would be in the area and would be calling to set up an appointment.  (Doc. No. 43 ¶ 8.)  NABI asked Pierce for the most critical parts needed by American Coach "to help focus their efforts."  (*Id.*)  Because these statements did not concern any particular defect to the subject buses, a reasonable fact finder could

not infer that Blue Bird or NABI was attempting to make repairs covered by Blue Bird's limited warranty on March 13, 2009.

Cahill attached to his affidavit over 70 pages of emails documenting several requests for replacement parts by American Coach to Blue Bird and NABI between September 29, 2008 and October 12, 2010.  (Doc. No. 67-1 at 6-78.)  However, American Coach does not cite, and the Court does not find, any discussion of repairs or replacement parts in those emails pertaining to a defect existing on March 31, 2008.

In summary, American Coach has not produced any evidence showing that work done by Blue Bird or its representatives after November 28, 2008, concerned a defect that was covered under the warranty.  Therefore, American Coach's claim for breach of Blue Bird's limited warranty is untimely, and summary judgment should be granted for Blue Bird on American Coach's claim for breach of express warranty in Count X.

## VIII.  Formation of "Oral Agreement for Warranty Work"

Notwithstanding the claims against NABI and Blue Bird for breach of implied and express warranties, American Coach argues that there is a genuine issue of material fact concerning whether NABI, Blue Bird, and American Coach entered into "freestanding, oral, enforceable contract agreements to provide service, support, and replacement parts."  (Doc. No. 41 at 14.)  Although American Coach did not assert this claim in the Complaint, (Doc. No. 1), neither Blue Bird nor NABI have objected to the consideration of this claim on summary judgment.  Therefore, the Court will consider the merits of the claim.

The elements of a breach of contract action are: (1) a valid contract; (2) a material breach; and (3) damages.  *Beck v. Lazard Freres & Co., LLC*, 175 F.3d 913, 914 (11th Cir. 1999).  A valid

contract consists of "offer, acceptance, consideration, and sufficient specification of the essential terms." *St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004) (citing *W.R. Townsend Contracting, Inc. v. Jensen Civil Constr., Inc.*, 728 So. 2d 297, 302 (Fla. 1st DCA 1999)); *see also* O.C.G.A. § 13-3-1 ("To constitute a valid contract, there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contact can operate.").

According to Dickson, after American Coach purchased the subject buses, he was assured by an unspecified person that Blue Bird's discontinuation of the subject buses' model would not affect American Coach's ability to obtain replacement parts "in a timely fashion." (Doc. No. 42 ¶ 4.) Cox's letter of October 5, 2007, regarding the discontinuation of the model of the subject buses stated that "NABI will continue to provide warranty and technical support for the [model of the subject buses] in the field through its existing customer service organization" and that "[r]eplacement parts will continue to be provided through NABI's Aftermarket Parts organization . . . ." (Doc. No. 68-6 at 2.)

Michael Pierce asserted that he "was told by representatives of both Blue Bird and NABI that they would resolve" the mechanical issues with the subject buses and obtain replacement parts. (Doc. No. 43 ¶ 4.) Pierce also "was assured [by an unspecified individual] that NABI would resolve" the mechanical issues with the subject buses. (*Id.* ¶ 11.) John Lewis asked Pierce "for the most critical parts which American Coach needed to get [the] buses back in service to help focus their efforts." (*Id.* ¶ 8.)

Representatives of both NABI and Blue Bird made similar statements to Dickson. Dickson asserted that "[o]n an ongoing basis, American Coach was told by representatives of both Blue Bird

and NABI that they would resolve the issues" with the subject buses.  (Doc. No. 42 ¶ 7.)  Dickson

met with James Bernacchi of NABI, who "represented that he could – and would – resolve these

issues."  (*Id.* ¶ 10.)  Jack Kemp told Dickson that "he would help" in response to Dickson's

complaint that lead times for parts exceeded fourteen months.  (*Id.* ¶ 12.)  Dickson further

maintained that he "was told . . . that NABI and Blue Bird would resolve the problems" in response

to contacting NABI and Blue Bird on March 13, 2009 about a bus that had been out of service for

several months and for which parts had been promised by March 1, 2009 but had not been delivered.

(*Id.* ¶ 13.)  NABI responded to American Coach's request that NABI buy back the subject buses due

to the degree of mechanical problems by "ask[ing] for part numbers and offer[ing] to help."  (*Id.* ¶

14.)  In addition, Buddy Cox told American Coach that NABI would "resolve the problems"

associated with the subject buses.  (*Id.* ¶ 15.)  Pierce and Dickson averred that based on the above-

referenced statements, American Coach relied on Blue Bird and NABI to repair the subject buses

and provide replacement parts as promised.  (*Id.* ¶ 18; Doc. No. 43 ¶ 13.)

Even if the foregoing assurances of Blue Bird and NABI constituted an offer that was

accepted by American Coach, there is no enforceable contract due to a lack of consideration.  "To

satisfy the consideration requirement under Georgia law, an accepting party to a contract can either

tender bargained-for performance or make a mutual promise."  *Lambert v. Austin Ind.*, 544 F.3d

1192, 1195 (11th Cir. 2008) (citing O.C.G.A. § 13-3-42).  Similarly, consideration under Florida law

is established by performance or a promise to perform.  *See Palm Lake Partners II, LLC v. C & C

Powerline, Inc.*, 38 So. 3d 844, 851 n.10 (Fla. 1st DCA 2010) ("[A] promise, no matter how slight,

qualifies as consideration," so long as "the promisor agrees to do something that he or she is not

already obligated to do." (quoting *Cintas Corp. No. 2 v. Schwalier*, 901 So. 2d 307, 309 (Fla. 1st

DCA 2005))); *Ballou v. Campbell*, 179 So. 2d 228, 230 (Fla. 2d DCA 1965) (noting that

consideration includes a promise or a specific act or forbearance) (quotation omitted).

There is no evidence in the record that American Coach made a promise to NABI or to Blue

Bird or took any action for the benefit of NABI or Blue Bird in exchange for a promise to repair and

provide replacement parts for the subject buses.  Dickson's deposition testimony reveals that the

only post-sale consideration provided by American Coach to NABI was payments for parts delivered

to American Coach and that American Coach provided no consideration for mere promises by

NABI:

> Q.   Was there anything given by American Coach to NABI in return for any
> promises NABI made to American Coach?
>
> A.  No, nothing for promises, no.  At some point we may have paid NABI for parts
> versus Blue Bird for parts. . . . [N]othing other than that.
>
> Q.  If you paid NABI for parts, you were provided parts, right?  That would be the
> agreement?
>
> A.  No.  I would say if we were provided parts by NABI or Blue Bird, we paid them
> for them.
> . . .
> Q.  In this claim, it's claimed that NABI made some warranties regarding these
> buses.  What I'm asking is: With regard to the claim that NABI somehow warranted
> these buses, was anything provided by American Coach to NABI for those promises?
>
> A.  No, no.  We wouldn't have provided them anything.  We would have brought
> them into the process with the – because they were responsible essentially for Blue
> Bird and we were attempting to get – compel them to resolve the issues, but we
> wouldn't have provided them anything for that.

(Doc. No. 54-2 at 43-44.)  Absent any consideration provided by American Coach for promises to

repair or provide replacement parts, no contract was formed between American Coach and NABI

or Blue Bird for repair or replacement parts other than Blue Bird's limited warranty.

-42-

## IX.  Enforceable Promise to Repair Buses and Provide Replacement Parts

American Coach contends that "[p]romises made by Blue Bird and NABI after the purchase

of the subject buses [to] fix mechanical problems and [to] provide replacement parts are enforceable

. . . ."  (Doc. No. 41 at 14.)  This assertion sounds in promissory estoppel.  Although American

Coach did not assert a claim for promissory estoppel in the Complaint, (Doc. No. 1), neither Blue

Bird nor NABI have objected to the consideration of this claim on summary judgment.  Therefore,

the Court will consider the merits of the claim.

The doctrine of promissory estoppel provides that "[a] promise which the promisor should

reasonably expect to induce action or forbearance on the part of the promisee or a third person and

which does induce such action or forbearance is binding if injustice can be avoided only by

enforcement of the promise."  O.C.G.A. § 13-3-44(a); *W.R. Grace & Co. v. Geodata Servs., Inc.*,

547 So. 2d 919, 924 (Fla. 1989) (citing Restatement (Second) Contracts § 90 (1979)).  The character

of the reliance protected by promissory estoppel is explained as follows:

> The promisor is affected only by reliance which he does or should foresee, and
> enforcement must be necessary to avoid injustice.  Satisfaction of the latter
> requirement may depend on the reasonableness of the promisee's reliance, on its
> definite and substantial character in relation to the remedy sought, on the formality
> with which the promise is made, on the extent to which the evidentiary, cautionary,
> deterrent and channeling functions of form are met by the commercial setting or
> otherwise, and on the extent to which such other policies as the enforcement of
> bargains and the prevention of unjust enrichment are relevant.

*W.R. Grace*, 547 So. 2d at 924 (quoting Restatement (Second) Contracts § 90 (1979)).

As reflected in the explication of promissory estoppel provided by Section 90 of the

Restatement (Second) of Contracts, there can be no promissory estoppel unless the terms of the

promise are definite in relation to the remedy sought.  *Vencor Hosps. v. Blue Cross Blue Shield of

R.I.*, 284 F.3d 1174, 1185 (11th Cir. 2002) (applying Florida law); *see also Voyles v. Sasser*, 472

S.E.2d 80, 82 (Ga. Ct. App. 1996) (rejecting a promissory estoppel claim due to the indefiniteness of the promise allegedly relied upon).  In addition, the promisee's reliance on the promise must be reasonable, and this inquiry is generally a factual matter for a jury.  *Gilmour v. Am. Nat. Red Cross*, 385 F.3d 1318, 1321 (11th Cir. 2004) (citing Georgia law).  However, "a determination of reasonableness can be made as a matter of law if a prior disclaimer or disclosure prevents justifiable reliance on the representation."  *Id.* (citing Georgia law); *see also D.O.P. Invs., Inc. v. Oakland Hills Joint Venture*, 909 So. 2d 355, 356 (Fla. 4th DCA 2005) (finding no justifiable reliance as a matter of law on a seller's misstatement as required for a claim of fraud where the buyer became aware of the truth prior to the purchase).

The promissory estoppel claim against Blue Bird fails because any reliance on promises by Blue Bird to repair the subject buses was unreasonable, as such promises contradict the terms of the Limited Warranty.  *See Gilmour*, 385 F.3d at 1322 (finding an employee's reliance on her employer's statement regarding payment of medical expenses unreasonable because coverage was clearly limited by the employer's manuals previously received by the employee); *Gerdes v. Russell Rowe Commc'ns, Inc.*, 502 S.E.2d 352, 354-55 (Ga. Ct. App. 1998) (holding that the plaintiff could not reasonably rely on an oral promise for higher compensation when an earlier binding agreement specifically stated that alterations must be in writing).  The Limited Warranty provides that "no person . . . is authorized to make any representation or warranty concerning Blue Bird products except to refer purchasers to this Limited Warranty."  (Doc. No. 34-1 at 16; Doc. No. 54-5 at 25.) Therefore, any reliance by American Coach on statements by representatives of Blue Bird to repair the subject buses beyond the terms of the Limited Warranty was unreasonable.

The parties do not address whether the transfer of Blue Bird's commercial bus operations to NABI at some unspecified date after the subject buses were delivered rendered NABI employees representatives of Blue Bird under the Limited Warranty.  (Doc. No. 69-13 at 7, 13.)  In any case, to the extent the Limited Warranty does not preclude reasonable reliance by American Coach on statements by NABI personnel, American Coach's promissory estoppel claim against NABI fails because the evidence of record does not show that NABI made a definite promise to American Coach to provide replacement parts or to repair the subject buses.  Promises by NABI to American Coach "offer[ing] to resolve the issues" with the subject buses and assuring that it "could – and would – resolve . . . issues" and that it "would help," (Doc. No. 42 ¶¶ 7-15), were indefinite because they failed to disclose what actions NABI would take and when NABI would take such actions.  *See Hygema v. Markley*, 187 So. 373, 380 (Fla. 1939) (rejecting the alleged promise as the basis for promissory estoppel because it "was entirely indefinite as to terms and time"); *Voyles*, 472 S.E.2d at 81-82 (finding promissory estoppel inapplicable because the seller's alleged promise to the buyer of an insurance agency that the agency would "continue to service [the seller's] insurance needs as it had prior to sale" was not sufficiently definite in time to justify buyer's reliance on it).  The indefinite nature of promises by Blue Bird and NABI to provide replacement parts is evident from Dickson's deposition testimony:

> Q. . . .  Were there any promises to provide replacement parts in connection with the purchase of the buses?

> A. I don't know.  I wasn't there.  The only promise that I was made is that after the buses were discontinued, [Blue Bird and NABI] would continue to support replacement parts for the buses.

> Q. Was there any time limit?  Was that just for infinity?

> A. There wasn't a time limit on them.

. . .
Q. Other than making sort of general promises of we'll take care of it or we'll help, were there any specific or concrete promises regarding exactly what they would do in terms of getting the replacement parts or assisting with repairs?

A. No, no. . . .

Q. They were sort of nonspecific, general statement like we'll take care of it?

A. Tell us what you need and we'll try to help you out and get them. That was essentially their response.
. . .
Q. . . . When we're talking about the complaints about the delays in getting parts, am I correct that at that point American Coach is buying parts from Blue Bird or NABI, not necessarily getting warranty provided parts? You couldn't just even get parts that you wanted to buy at that point, right?

A. Correct, right. . . .
. . .
Q. You were just trying to buy parts and they can't get them quick enough?

A. Correct.

(Doc. No. 54-3 at 2-5.) Similarly, Chuck Brookshire's statement to Pierce that Blue Bird would pull parts off buses being assembled if necessary to improve lead times for parts and get Kemp involved, which caused Pierce to believe that Blue Bird and NABI were committing to fix the problems with the subject buses, "was not limited to any particular time frame but rather to ongoing problems being experienced." (Doc. No. 66-1 ¶¶ 6-7, 9.)

Although downtimes for buses ranged from days to months and lead times for repair parts were up to fourteen weeks, (Doc. No. 42 ¶ 12), there is no evidence in the record that Blue Bird or NABI promised American Coach repair and lead times less than this duration or of any specific duration. "[T]o apply the doctrine of promissory estoppel to facts which are not sufficiently definite 'in time or term or reasonableness' would 'wreak havoc with basic contract law.'" *Bergman v. DeIulio*, 826 So. 2d 500, 504 (Fla. 4th DCA 2002) (quoting *W.R. Grace*, 547 So. 2d at 925). Thus,

absent a definite and substantial promise to repair the subject buses and provide replacement parts, the doctrine of promissory estoppel is inapplicable.

In addition to being indefinite, assurances by Blue Bird and NABI that they "could – and would – resolve . . . issues" and that it "would help" are insufficient to support a claim of promissory estoppel because those statements concern present intentions with regard to future acts. (Doc. No. 42 ¶¶ 10, 12-16); *see W.R. Grace*, 547 So. 2d at 924 ("[O]rdinarily, a truthful statement as to the present intention of a party with regard to his future act is not the foundation upon which an estoppel may be built." (quoting *S. Inv. Corp. v. Norton*, 57 So. 2d 1, 3 (Fla. 1952)).

In summary, to the extent American Coach asserts a claim of promissory estoppel against NABI and Blue Bird arising out of promises to provide replacement parts and repairs, summary judgment should be granted for NABI and Blue Bird.

## X. Counts V, VI, XI, XII: Negligence and Strict Liability Against NABI and Blue Bird

Defendants contend that the negligence and strict liability claims against them are barred by the economic loss rule. (Doc. No. 33 at 12-13.) The economic loss rule is a judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses. *Indem. Ins. Co. of N.A. v. Am. Aviation, Inc.*, 891 So. 2d 532, 536 (Fla. 2004). "Economic losses are, simply put, disappointed economic expectations." *Id.* at 536 n.1. They include "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits." *Id.* at 536 n.1 (quoting *Casa Clara Condo. Ass'n, Inc. v. Charley Toppino & Sons, Inc.,* 620 So. 2d 1244, 1246 (Fla. 1993)). "In the specific context of products liability, economic loss includes 'the diminution in the value of the product because it is inferior in quality and does not work for the general purposes for which is was manufactured or

sold.'" *Id.* (quoting *Casa Clara*, 620 So. 2d at 1246). "Economic loss has also been defined more broadly as the loss of the 'benefit of [the] bargain.'" *Id.* (quoting *Casa Clara*, 620 So. 2d at 1246).

The Florida economic loss rule applies in two situations: (1) where the parties are in contractual privity and one party seeks to recover damages in tort for matters arising out of the contract; or (2) where the defendant is a manufacturer or distributor of a defective product which damages itself but does not cause personal injury or damage to any other property. *Curd v. Mosaic Fertilizer, LLC*, 39 So. 3d 1216, 1223 (Fla. 2010) (citing *Am. Aviation*, 891 So. 2d at 536). These two situations have been named the contractual economic loss rule and the products liability economic loss rule, respectively. *Id.*

In Georgia, "the 'economic loss rule' generally provides that a contracting party who suffers purely economic losses must seek his remedy in contract and not in tort." *Gen. Elec. Co. v. Lowe's Home Centers, Inc.*, 608 S.E.2d 636, 637 (Ga. 2005). A contracting party "can recover in tort only those economic losses resulting from injury to his person or damage to his property" other than the defective product itself. *Id.* at 637 & n.4 (citing *Vulcan Materials Co. v. Driltech*, 306 S.E.2d 253, 257 (Ga. 1983)). Both economic loss rules have exceptions, but none apply here.[8]

---

[8] The economic loss rule does not apply to torts independent of a breach of contract, such as fraudulent inducement and negligent misrepresentation. *Am. Aviation*, 891 So. 2d at 537; *Moransais v. Heathman*, 744 So. 2d 973, 981 (Fla. 1999); *see also ASC Const. Equip. USA, Inc. v. City Commercial Real Estate, Inc.*, 693 S.E.2d 559, 566 (Ga. Ct. App. 2010) (holding that economic loss rule did not bar a claim for negligent misrepresentation where losses were purely economic). The rule also does not apply to allegations of "neglect in providing professional services." *Am. Aviation*, 891 So. 2d at 537 (citing *Moransais*, 744 So. 2d at 983); *see also Hamilton v. Powell, Goldstein, Frazer & Murphy,* 306 S.E.2d 340, 342 (Ga. Ct. App. 1983) (recognizing tort claims for attorney malpractice arising from duty imposed by law, rather than by contract). Nor does the economic loss rule "prevent the bringing of an action and recovery for intentional torts, such as, fraud, conversion, intentional interference, civil theft, abuse of process, and other torts requiring proof of intent." *Curd*, 39 So. 3d at 1233 (citing *Am. Aviation*, 891 So. 2d at 543). In addition,

(continued...)

American Coach argues that the economic loss rule does not apply because its "allegations are based, in part, on acts that occurred after the purchase of the subject buses and are based on servicing and repair of the buses, not the purchase itself." (Doc. No. 41 at 16.) To the extent this distinction raises issues beyond the pleadings, (Doc. No. 1 ¶¶ 74, 138), neither NABI nor American Coach object to consideration of those issues. Accordingly, the Court will consider whether the economic loss rule bars the following tort claims by American Coach: (1) negligent manufacturing of the subject buses against NABI; (2) negligent repair of the subject buses against NABI; (3) strict liability against NABI; (4) negligent manufacturing of the subject buses against Blue Bird; (5) negligence repair of the subject buses against Blue Bird; and (6) strict liability against Blue Bird.

## A.  Count V:  Negligent Manufacturing Against NABI

The Court need not decide whether the economic loss rule bars American Coach's negligent manufacturing claim against NABI because that negligence claim lacks the essential element of duty. *See, e.g.*, *Curd*, 39 So. 3d at 1227 (noting that the existence of a legal duty is an essential element of a negligence claim); *Underwood v. Select Tire, Inc.*, 676 S.E.2d 262, 267 (Ga. Ct. App.

---

(...continued)

Georgia courts recognize an "accident exception" to the economic loss rule, under which "loss stemming from defects that cause accidents of violence or collision with external objects is treated as physical injury" which may be recovered in tort, whereas "[d]efects of quality, evidenced by internal deterioration or breakdown," are considered economic loss that cannot be recovered pursuant to the economic loss rule. *Driltech*, 306 S.E.2d at 255; *see also id.* at 257 ("An 'accident' [is] defined as a sudden and calamitous event which, although it may only cause damage to the defective product itself, poses an unreasonable risk of injury to other persons or property.").

Notwithstanding American Coach's argument that the fraudulent inducement and negligent misrepresentation claims may be viable with additional discovery, (Doc. No. 41 at 16-17), American Coach has produced no evidence supporting any of the exceptions to the economic loss rule. Although one of the subject buses was in an "accident," (Doc. No. 42 ¶ 12), the evidence of record does not show that the accident stemmed from a defect in the bus itself and thereby satisfies the accident exception to the economic loss rule under Georgia law. *Driltech*, 306 S.E.2d at 255.

2009) (same).  Because NABI did not manufacture the subject buses, (Doc. No. 34-1 ¶¶ 4-6), NABI

owed American Coach no duty with respect to the manufacturing of the subject buses.  *Cf. Borda*

*v. East Coast Entm't, Inc.*, 950 So. 2d 488, 491 (Fla. 4th DCA 2007) ("Florida . . . recognizes that

a legal duty will arise whenever a human endeavor creates a generalized and foreseeable risk of

harming others." (quoting *McCain v. Fla. Power Corp.*, 593 So. 2d 500, 503 (Fla. 1992)); *Ponse v.*

*Atlanta Cas. Co.*, 563 S.E.2d 499, 502 (Ga. Ct. App. 2002) ("[W]here one undertakes an act which

he has no duty to perform and another reasonably relies upon that undertaking, the act must

generally be performed with ordinary or reasonable care." (citation omitted)).   Absent any

manufacturing by NABI triggering a legal duty, summary judgment should be granted for NABI to

the extent American Coach claims that NABI negligently manufactured the subject buses.

### B.  Count V: Negligent Repair Against NABI

Discussion of the economic loss rule is also unnecessary to the extent American Coach

asserts a negligent repair claim against NABI because there is no evidence of record that NABI's

repairs or attempted repairs of the subject buses damaged American Coach.  As noted by Blue Bird

and NABI in their supplement briefing, (Doc. No. 56 at 12-14), Dickson had no knowledge of an

instance where Blue Bird or NABI repaired or attempted to repair the subject buses:

> Q.  Did Blue Bird or NABI actually lay hands on the buses and actually perform the repairs, or were they reimbursing American Coach for repairs that others performed on the buses?
>
> A.  I don't recall . . . NABI or Blue Bird ever physically doing repairs themselves. They may have come down and switched something from this to that.  I don't recall. It's not really – they're not – it's not like they own dealerships and they provide service as a part of the relationship.
>
> Q.  As I understand it, American Coach would get the buses repaired, they submit claims to Blue Bird, and they'd be reimbursed if they were covered under a warranty?

> A. That is the way the process would work . . . .
>
> . . .
>
> Q. So am I correct when I say neither Blue Bird nor NABI laid hand on or repaired the buses?
>
> A. As far as I know that's correct.

(Doc. No. 54-2 at 45-47.)

Kemp testified that he traveled to American Coach's facilities on behalf of Blue Bird and NABI on five occasions to made repairs to the subject buses and to assist American Coach's personnel make repairs.  (Doc. No. 69-13 at 15-16.)  However, American Coach, which bears the burden of proof, has produced no evidence that Kemp's actions caused damage to American Coach. Finding no evidence of record that NABI's repairs or attempted repairs to the subject buses caused damage to American Coach, NABI is entitled to summary judgment on the negligent repair claim against it.  *See Curd*, 39 So. 3d at 1227 (noting that a negligence claim requires proof of conduct by the defendant causing actual loss or damage (citation omitted)); *Bashlor v. Walker*, 693 S.E.2d 858, 863 (Ga. Ct. App. 2010) (same).

### C.  Count VI: Strict Liability Against NABI

NABI argues that the strict liability claim against it for defective manufacture of the subject buses is barred by the economic loss rule.  (Doc. No. 33 at 12-14.)  Notwithstanding the applicability of the economic loss rule, the strict liability claim against NABI fails because NABI did not manufacture, distribute, or sell the subject buses.

Under Georgia law, a strict liability claim can be maintained only against the manufacturer of a product.  *Farmex, Inc. v. Wainwright*, 501 S.E.2d 802, 804 (1998) ("[S]trict liability is an available remedy only against a 'manufacturer.'"); *Ellis v. Rich's, Inc.*, 212 S. E.2d 373, 376 (1975) (noting that O.C.G.A. § 51-1-11(b) "preclude[s] any extension of strict liability by this court" to

parties other than the manufacturer).  A "manufacturer" is an entity having "an active role in the

production, design, or assembly of products and placing them in the stream of commerce." *Alltrade,*

*Inc. v. McDonald*, 445 S.E.2d 856, 858 (Ga. Ct. App. 1994) (quoting *Freeman v. United Cities*

*Propane Gas of Ga.*, 807 F. Supp. 1533, 1540 (M.D. Ga. 1992)).

      The Florida doctrine of strict liability is broader than the Georgia doctrine.  Strict liability

in Florida embraces not only manufacturers, but also "others in the distributive chain including

retailers, wholesalers, . . . distributors," and commercial lessors "engaged in the business of leasing

of the allegedly defective product." *Samuel Friedland Fam. Enters. v. Amoroso*, 630 So. 2d 1067,

1068, 1071 (Fla. 1994).

      NABI cannot be held strictly liable under either Georgia or Florida law.  NABI did not

manufacture, distribute, or sell the subject buses.  (Doc. No. 34-1 ¶¶ 4-6.)  In addition, NABI did

not take any actions or make any representations to American Coach regarding the subject buses

until after the buses were delivered to American Coach and after American Coach reported

mechanical defects in the subject buses to Blue Bird.  (Doc. No. 42 ¶¶ 5,7; Doc. No. 43 ¶ 3.)

Because NABI did not take any actions governed by the doctrine of strict liability, summary

judgment should be granted for NABI on American Coach's strict liability claim in Count VI.

### D.  Count XI:  Negligent Manufacturing Against Blue Bird

      American Coach's claim that Blue Bird negligently manufactured the subject buses is barred

by the economic loss rule, as there is no evidence in the record that American Coach suffered

personal injury or damage to property other than purely economic damages to the subject buses

caused by Blue Bird's failure to uphold its contractual obligations.  *See Lowe's*, 608 S.E.2d at 637

& n.4 (noting that under the economic loss rule, a plaintiff can recover in tort "only those economic

losses resulting from injury to his person or damage to his property" other than the defective product itself (citing *Driltech*, 306 S.E.2d at 257)); *see also Curd*, 39 So. 3d at 1223 (noting that the products liability economic loss rule bars recovery in tort where "the defendant is a manufacturer or distributor of a defective product which damages itself but does not cause personal injury or damage to any other property").

American Coach "experienced breakdowns and service interruptions and failures of the subject buses," "experienced the failure and/or refusal of Blue Bird and NABI to provide replacement . . . parts . . . either completely or within a reasonable time frame," and "sustained economic losses directly attributable to the failure and/or refusal of Blue Bird and NABI to provide replacement parts in a timely fashion." (Doc. No. 43 ¶¶ 14-16.) Further, Brian Dickson averred that American Coach's damages included "wear and tear" to buses which American Coach "press[ed] into service . . . to cover for the 'down' Blue Bird buses." (Doc. No. 68-1 ¶ 19.) American Coach also produced an extensive log of mechanical repairs made to the subject buses since they were purchased from Blue Bird. (Doc. Nos. 74, 78.) However, the repairs reflected in the log do not involve personal injury or damage to property other than the subject buses. Because American Coach's losses are purely economic and because Blue Bird's contractual obligations pertaining to the subject buses are limited by the Blue Bird limited warranty, (Doc. No. 34-1 at 16; Doc. No. 54-5 at 25), American Coach's negligent manufacturing claim against Blue Bird is barred by the economic loss rule. *See Driltech*, 306 S.E.2d at 257 ("The economic loss rule prevents recovery in tort when a defective product has resulted in the loss of the value or use of the thing sold, or the cost of repairing it."); *see also Am. Aviation*, 891 So. 2d at 536 n.1 (noting that economic losses are

"disappointed economic expectations," including "damages for inadequate value, costs of repair and replacement of the defective product, [and] consequent loss of profits" (citations omitted)).

### E.  Count XI: Negligent Repair Against Blue Bird

The Court need not address whether the negligent repair claim against Blue Bird is barred by the economic loss rule.  As noted *supra* part X.B, there is no evidence of record that Blue Bird performed or attempted to perform any repairs of the subject buses that damaged American Coach. Therefore, Blue Bird breached no duty to American Coach and is entitled to summary judgment on the negligent repair claim.

### F.  Count XII: Strict Liability Against Blue Bird

The economic loss rule applies to both negligence and strict liability claims.  *See Flintkote Co. v. Dravo Corp.*, 678 F.2d 942, 946 (11th Cir. 1982) (noting that under Georgia law, the economic loss rule bars claims of both negligence and strict liability where the only damages are to the defective product itself (citing *Chrysler Corp. v. C. C. Taylor*, 234 S.E.2d 123, 124 (Ga. Ct. App. 1977))); *Busbee v. Chrysler Corp.*, 524 S.E.2d 539, 541-42 (Ga. Ct. App. 1999) (barring the plaintiff's negligence and strict liability claims due to no viable exception to the economic loss rule); *see also Fla. Power & Light Co. v. Westinghouse Elec. Corp.*, 510 So. 2d 899, 902 (Fla. 1987) ("[A] manufacturer in a commercial relationship has no duty under either a negligence or strict products liability theory to prevent a product from injuring itself." (quoting *E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 871 (1986))).

The strict liability claim against Blue Bird fails because the record contains no evidence of non-economic damages allegedly resulting from the defective manufacturing of the subject buses. *See supra* parts X.D (noting that American Coach only provided evidence of economic loss); *Cedars*

*of Lebanon*, 444 So. 2d at 1070-71 (affirming the dismissal of a strict liability claim against a manufacturer where the alleged damage was limited to the defective product itself); *Henderson v. Gen. Motors Corp.*, 262 S.E.2d 238, 239-40 (Ga. Ct. App. 1979) (applying the economic loss rule to grant summary judgment for the defendant car manufacturer on a strict liability claim where the plaintiff only sustained economic loss from an improperly manufactured car).   American Coach bears the burden of proof on this claim.  *E.g.*, *Ctr. Chem. Co. v. Parzini*, 218 S.E.2d 580, 582 (Ga. 1975).  Accordingly, summary judgment should be granted for Blue Bird on the strict liability claim in Count XII.

**Conclusion**

Based on the foregoing, it is hereby **ORDERED** and **ADJUDGED** that the Motion for Summary Judgment by Defendants North American Bus Industries, Inc. and Blue Bird Corporation (Doc. No. 33) is **GRANTED**.  The Clerk of Court is directed to enter judgment for Defendants North American Bus Industries, Inc. and Blue Bird Corporation and against Plaintiff American Coach Lines of Orlando, Inc. on Counts I - XII of the Complaint and close the case.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on February 14, 2011.

PATRICIA C. FAWSETT, JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record